223 So.2d 713 (1969)
Frances Ruth Bennett SHINGLETON and Nationwide Mutual Insurance Company, an Ohio Corporation, Petitioners,
v.
Elizabeth Reiff BUSSEY, Respondent.
No. 37636.
Supreme Court of Florida.
May 28, 1969.
Rehearing Denied July 8, 1969.
*714 Keen, O'Kelley & Spitz, A. Frank O'Kelley, Chas. H. Spitz and Helen C. Ellis, Tallahassee, for petitioners.
Parker, Foster & Madigan, Leo L. Foster and Gayle Smith Swedmark, Tallahassee, for respondent.
Raymond Ehrlich, Jacksonville, for American Insurance Assn., American Mutual Insurance Alliance and National Assn. of Independent Insurors, amicus curiae.
Charles S. Ausley, Tallahassee, and John S. Cox, Jacksonville, for Federation of Insurance Counsel and Florida Defense Lawyers Assn., amicus curiae.
ERVIN, Chief Justice.
The District Court of Appeal, 1st District, held in this case, 211 So.2d 593, that the trial court erred in dismissing the appellant Nationwide Mutual Insurance Company as a party defendant in an action against its insured, appellant Shingleton, arising out of an automobile collision.
We find conflict of decisions between the District Court's holding in this case and Artille v. Davidson (1936), 126 Fla. 219, 170 So. 707, and Thompson v. Safeco Insurance Co. of America (Fla.App. 1967), 199 So.2d 113, and accept jurisdiction to review on certiorari.
However, on the merits, we find, as did the District Court of Appeal in the instant case, that since our decision in Artille in 1936, which was followed by the District Court of Appeal, 4th District, in Thompson, the applicable law governing this controversy has undergone material alteration *715 sufficient to convince us we should affirm the District Court. Our reasons therefor are outlined hereinafter.
We conclude a direct cause of action now inures to a third party beneficiary against an insurer in motor vehicle liability insurance coverage cases as a product of the prevailing public policy of Florida.
Public policy is a molding device available to the judicial process by which changing realities and the attending manifested rules of fair play may be incorporated into our corpus juris. The classic opinion by Mr. Justice Cardoza in MacPherson v. Buick Motor Co. (1916), 217 N.Y. 382, 111 N.E. 1050, L.R.A. 1916F, 696, is illustrative of the role of public policy as a catalyst toward the advancement of jurisprudence.
The District Court concluded that liability policies as the one here involved should be construed as "quasi-third party beneficiary contract," thereby giving the injured third party an unquestionable right to bring a direct action against the insurance company as a party defendant.
Although the District Court did not undertake to expound on the rationale of this theory, we believe the reasoning advanced by the Illinois District Court of Appeals in Gothberg v. Nemerovski (1965), 58 Ill. App.2d 372, 375, 208 N.E.2d 12, is particularly responsive to this problem. In addressing itself to the theory underlying the maintenance of a suit against an insurance broker who virtually occupied the position of insurer, the Illinois Appellate Court stated in part (at 19-20):
"[11, 12] In substance, defendant contends that the plaintiffs cannot recover under the third party beneficiary doctrine because the contract was not made for their direct benefit, and, if anything, they are only incidental beneficiaries. Defendant argues for the application of the rule stated in Carson Pirie Scott & Co. v. Parrett, 346 Ill. 252, 257-258, 178 N.E. 498, 501, 81 A.L.R. 1262 (1931):
"`The test is whether the benefit to the third person is direct to him or is but an incidental benefit to him arising from the contract. If direct he may sue on the contract; if incidental he has no right of recovery thereon. * * *
"`* * * The rule is, that the right of a third party benefited by a contract to sue thereon rests upon the liability of the promisor, and this liability must affirmatively appear from the language of the instrument when properly interpreted and construed. The liability so appearing cannot be extended or enlarged on the ground alone that the situation and circumstances of the parties justify or demand further or other liability.'
"[13] Because of the peculiar significance of automobile liability insurance as well as the provisions of the policy contemplated by the parties and eventually issued, we do not agree with defendant's theory. We believe that these plaintiffs can sue defendant directly. The plaintiffs can be considered third party beneficiaries of the contract to procure insurance entered into between Jackson and defendant, that is, they had a sufficient interest in such a contract to bring suit directly for its breach. In entering into this contract to procure insurance, it is a fair and reasonable inference that Jackson and his mother were contemplating possible injury to unidentified third parties, and the insurance coverage was for the direct benefit of third parties who might be injured through Jackson's negligence. Because Jackson, as the insured, was to be directly benefited by the insurance coverage, does not preclude the fact that others were also intended to be directly benefited.
"[14] The general public, subjected to possible injury through Jackson's negligent operation of a motor vehicle, possessed more than a mere `incidental' benefit from the contract to procure public liability insurance. It was, in effect, *716 a real party in interest to this contract. The procuring of automobile public liability insurance of the type contemplated has connotations extending to the general public above and beyond the private interests of the two contracting parties. As was said by our Supreme Court in Simmon v. Iowa Mutual Casualty Co., 3 Ill.2d 318, 322, 121 N.E.2d 509, 511 (1954):
"`Automobile insurance has taken an important position in the modern world. It is no longer a private contract merely between two parties. The greater part of litigation in our trial courts is concerned with claims arising out of property damage, personal injury or death caused by operation of motor vehicles. The legislatures of all our States have recognized the hazards and perils daily encountered and as a result have enacted various pieces of legislation aimed at the protection of the injured party. Financial Responsibility acts, Unsatisfied Judgment Fund acts, and other similar laws are direct results of this concern. That the general welfare is promoted by such laws can be little doubted. Government and the general public have an understandable interest in the problem. Many persons injured and disabled from automobile accidents would become public charges were it not for financial assistance received from the insurance companies.
"[15] The fact that plaintiffs' identity may not have been known at the time the contract to procure insurance was made does not prevent them from assuming the status of third party beneficiaries. * *" (Emphasis in text.)
We have quoted extensively from the Illinois Appellate Court opinion because its reasoning is enlightening in demonstrating that the third party beneficiary doctrine encompasses, substantively speaking, a cause of action against an insurer in favor of members of the public injured through the acts of an insured. Support for this view is buttressed by the State's Financial Responsibility Law, Ch. 324, Florida Statutes, F.S.A.
It cannot be disputed that securance of liability insurance coverage protection for the operation of a motor vehicle, regardless of whether the policy is secured to meet the requirements of Ch. 324, F.S., is an act undertaken by the insured with the intent of providing a ready means of discharging his obligations that may accrue to a member or members of the public as a result of his negligent operation of a motor vehicle on the public streets and highways of this state.
Viewed in this light, we think there exists sufficient reason to raise by operation of law the intent to benefit injured third parties and thus to render motor vehicle liability insurance amenable to the third party beneficiary doctrine.
Once it is established that a person injured by the act of an insured while operating a motor vehicle is a party entitled to maintain a cause of action directly against the liability insurer of the tort-feasor, the question then presented is when may the injured third party exercise his right to bring suit on the cause of action vested in him. Resolution of this question entails the effect to be attributed to rules of civil procedure and provisions of the policy as well as the process of weighing and measuring certain countervailing public policies.
It seems reasonable to view the cause of action against an insurer in favor of an injured third party as vesting in or accruing to the injured party at the same time he becomes entitled to sue the insured, assuming, of course, due notice of the injured party's claim has been given insurer and it has had opportunity to duly investigate the same.
Of course, by the very nature of liability insurance it is axiomatic that liability of the insured is a condition precedent to liability of the insurer on the cause of action against it by the injured third *717 party. Such condition, however, does not effect a postponement in liability to be sued but only makes the liability of the insurer to judgment contingent on the establishment of liability to judgment of the insured; therefore, there is nothing inherent in the general nature of liability insurance which would operate to preclude an injured third party beneficiary from directly suing and joining the insurer as a codefendant in the action to determine the insured's liability.
In the present case, the policy of insurance contains provisions to the effect that no action shall lie against the insurer until the amount of the obligation of the insured shall have been finally determined by judgment and that the policy shall not give any right to join the insurer in any action to determine the liability of an insured. We are aware that a majority of those jurisdictions which have had occasion to adjudicate the efficacy of such clauses are aligned in sustaining them as a bar to direct action against and joinder of an insurer in an action to determine the liability of an insured. See Appleman, 8 Insurance Law and Practice, §§ 4851-66. However, we are convinced that the time has arrived when the legal reasons advanced in favor of joinder and direct action against an insurer outweigh and preponderate over the traditional notions asserted to justify precluding an injured third party from enjoying such rights. Compare Georgia Southern & Florida Ry. Co. v. Seven-Up Bottling Co. (Fla.), 175 So.2d 39.
It can hardly be disputed that motor vehicle liability insurance is a subject necessarily lending itself to regulation imposed by the State in the exercise of its police power. It is a subject affected with a public interest and its regulation in a multiple of ways for the protection of the general public has become of more and more importance in the passage of years and changing times. This being the case, it is not unreasonable to restrict or limit the effect of express contractual provisions where the same collide with those considerations which affect the interests of the public generally. Where, for example, they collide with principles of due process and equal protection, and the right to a full and adequate remedy of law guaranteed all citizens.
The provisions prohibiting joinder and direct action in the case sub judice do not merely attempt to defer the liability of the insurer, but in addition seek to defer, subject to the same condition, the right of an injured third party beneficiary to maintain a cause of action against the insurer. In the modern world which is fraught with public safety hazards, it is unrealistic that mass liability insurance coverage designed to afford protective benefits for the general public should contain such condition precedent as a barrier to the right of identified members of the protected class to pursue a speedy, realistic and adequate recovery action. This hardly comports with Section 4, Declaration of Rights, State Constitution, F.S.A., that the courts shall be open so that persons injured shall have remedy by due course of law without denial or delay.
Admittedly, a contract of insurance can be entered into which imposes certain reasonable conditions or limitations on the responsibility of the insurer to pay out the proceeds or benefits contemplated by the contract. But such conditions cannot unreasonably burden or curtail the otherwise actionable right of a third party beneficiary to sue jointly the parties charged with liability, viz., the tort-feasor and the insurer of the tort-feasor. The insurer is, of course, not a joint tort-feasor. The unfettered right of a plaintiff to sue defendants jointly is so universal and essential to due process that it can rarely be curtailed or restricted by private contract between potential defendants. An insurer is free not to enter into a liability policy with an insured, but if it does so it cannot unreasonably circumscribe its potential liability under the contract by stipulating therein restraints upon the right of the third party beneficiary to sue directly an *718 insurer contingently or secondarily liable and to join the insurer as a defendant in the action to determine the liability of the insured.
Such a view is particularly warranted where as in the present case the injured party plaintiff is a nonconsenting party to the contract and derives standing as a third party beneficiary entitled to sue in a direct joint action to recover the benefits of the policy by virtue of operation of law.
The insured may agree to conditions vis-a-vis the insurer to waive his own constitutional rights and curtail or postpone his remedies under the policy, but it is a contradiction of public policy to contract for liability coverage for members of the public and simultaneously deny a beneficiary thereunder the ordinary rights of a litigant to sue for such coverage through the restraint of a "no joinder" clause. It is an anomaly in the law and discriminatory for the parties to a contract to attempt to deny nonconsenting members of the public a full, complete, adequate remedy at law which is constitutionally guaranteed all citizens.
The insured and the insurer cannot constitutionally contract away or postpone the speedy and adequate remedy the law affords a third party, nor impose unusual limitations upon the latter's right to jointly sue adverse parties. Balanced, therefore, against the public policy of this state favoring the elimination of multiplicity of suits and unreasonable impediments to the remedial process of adjudication of adversary rights conferred by the operation of substantive principles of law, we think the "no joinder" restriction in the subject policy goes much too far and therefore should be construed as securing for the insurer only the right to assert the nonliability and not the nonjoinder of the insured with the insurer as a condition precedent to the liability of the insurer.
In reaching the foregoing conclusion, we are cognizant that the primary reason advanced in those jurisdictions which have sustained "no joinder clauses" in the area of liability insurance is that such a clause serves to prevent prejudice to the insurer through the prophylactic effect of isolating from the jury's consideration any knowledge that coverage for the insured exists. Such a result is deemed desirable because of the notion that a jury is prone to find negligence or to augment damages, if it thinks that an affluent institution such as an insurance company will bear the loss. See Appleman, 8 Insurance Law and Practice, § 4861. While we will not go so far as to assert that the above proposition has been all but obliterated by the more recent indications to the effect that the injection of insurance does not operate to increase the size of jury verdicts, we do think the stage has now been reached where juries are more mature. Accordingly, a candid admission at trial of the existence of insurance coverage, the policy limits of same, and an otherwise aboveboard revelation of the interest of an insurer in the outcome of the recovery action against insured should be more beneficial to insurers in terms of diminishing their overall policy judgment payments to litigating beneficiaries than the questionable "ostrich head in the sand" approach which may often mislead juries to think insurance coverage is greater than it is.
It can hardly be denied that one of the fundamental goals of modern procedural jurisprudence is to secure a method of providing an efficient and expeditious adjudication of the rights of persons possessing adverse interests in a controversy. The liberal joinder provisions of Rule 1.210(a), Florida Rules of Civil Procedure, 30 F.S.A., acknowledges this policy by providing: "Any person may be made a defendant who has or claims an interest adverse to the plaintiff." This requirement of the procedural rules raises the presumption that unless the Legislature in the exercise of *719 its police power regulation of insurance, affirmatively gives insurers the substantive right to insert "no joinder" clauses in liability policies there is no basis in law for insurers to assume they have such contractual right as a special privilege not granted other citizens to contract immunity with their insureds from being sued as joint defendants by strangers.
The District Court in its decision has ably spelled out the interests of an insurer in actively participating in the litigation brought against its insured. In addition to the reasons assigned by the District Court for such participation, there are certain facets to the question of joinder which we believe emphatically support the objective of a single law suit as a measure for affording complete adjudication of the tripartite interests whether they be concurrent or conflicting.
It is not altogether improbable that situations may arise where an injured third party has a very real interest in promptly aligning the insurer with the insured in a recovery action in order to timely adjudicate all questions concerning the coverage supplied the insured by the insurer. The fact situations recently encountered in certain cases decided by our Court (e.g., Bergh v. Canadian Universal Insurance Co., 1968, 216 So.2d 436, and Sellers v. United States Fidelity & Guaranty Co., 1966, 185 So.2d 689) emphasize the importance that an injured party plaintiff have the advantage of an ordinary litigant from the moment of injury, i.e., from the accrual of his cause of action, of judicial oversight of the policy provisions affecting his claim and to that end to press his claim by suit, if desired, against both the insured and insurer as a necessary incident to the recovery of his loss. Delays of the insured in filing proof of claim, claims of excess or other insurance, claims of misrepresentation, failure to seek early arbitration, and a variety of other defenses growing out of policy provisions can be asserted vis-a-vis the liability of the insurer against the insured which may operate, and often do, to defeat recovery by the injured third party beneficiary.
The dangers inherent in such situations may be compounded when for one reason or another the insured negligently fails, or has little reason to zealously seek to secure for the injured third party whatever protection may be derived from the policy with the insurer.
In any case, it seems anomalous to public policy to procedurally sanction and condone a situation where the ultimate beneficiary of policy proceeds is deprived by a provision in the policy of an open, speedy and realistic opportunity to pursue by due process his right of an adequate remedy at law jointly against the insured and insurer. Especially is the result obtained by such policy restriction incongruous where the insurer participates in the controversy, not as a joint defendant in the proceedings brought by the injured plaintiff against the insured, but, rather, as the undisclosed guardian of the interests and rights of the insured  and of course, of the insurer's interest also. See In re Rules Governing Conduct of Attorneys in Florida, (Fla. 1969), 220 So.2d 6. In such cases, it is hard to imagine all of the many difficulties which could operate to impede the injured third party plaintiff from ferreting out and having adjudicated his rights of adequate remedy against the insured and the insurer when he is precluded from initially and directly having the trial court consider all facets of the joint and several liabilities of the defendants in one action, not only as to plaintiff's claim against the insured, but as to any defenses of insurer against insured which might operate to destroy his claim.
A feasible approach to remedy the potential dangers inherent in the above described situations appears to be afforded by the joinder of the insurer. If joinder is allowed *720 initially, all the cards are on the table and all interrelated claims and defenses can be heard and adjudicated reciprocally among all parties and the plaintiff will have the same initial right as insurer now avails itself against plaintiff to protect his rights against the insurer. In this manner the interests of all the parties and the concomitant right to expeditiously litigate the same in concert are preserved.
If it should clearly appear in pretrial procedures that joinder of the insurer interposes issues between insured and insurer in particular case situations likely to unduly complicate trial of the questions pertaining to the liability of the insured to the injured third party and commensurate damages to be awarded, it would be a simple process under our liberal civil rules for the trial judge on timely motion to sever such complicating issues between insurer and insured for separate trial or adjudication. But such separation for adjudication of issues between insurer and insured would not remove from the case the identity of all parties joined nor their claims and defenses and their right to participate and protect their respective interests.
For the foregoing reasons, we affirm the judgment of the District Court of Appeal, 1st District, on the merits. We recede from all prior decisions in conflict herewith.
THORNAL, CARLTON, ADKINS and BOYD, JJ., concur.
DREW, J., dissents with opinion.
ROBERTS, J., dissents and agrees with DREW, J.
DREW, Justice (dissenting):
The District Court of Appeal, 1st District, held in this case, Bussey v. Shingleton, 211 So.2d 593 (1968), that the trial court erred in dismissing the appellant Nationwide Insurance Company as a party defendant in an action against its insured, appellant Shingleton, arising out of an automobile collision. The opinion states, p. 596:
Such liability policies * * * should be construed as quasi-third party beneficiary contracts, thereby giving the injured third party an unquestionable right to join such maker of such insurance policy as a party defendant. This may be accomplished by legislative act, but can be accomplished by what we believe to be a proper construction of Rule 1.210(a), F.R.C.P. to include as a party defendant just those whom the Rule says: `Any person who has or claims an interest adverse to the plaintiff.'
Certiorari has been granted on the basis of conflict with the opinion in Thompson v. Safeco Insurance Co. of America, 199 So.2d 113 (4th Dist.Ct.App.Fla. 1967), stating: "Florida is among those jurisdictions which [do] not recognize the third party beneficiary theory under automobile liability insurance policies in the absence of a policy provision." The latter qualification has obvious reference to a policy provision necessarily conferring third party benefits, and does not in my opinion serve to distinguish the stated rule in that case from the situation now presented in which a liability insurer has been held a proper party defendant (in an action to determine the insured's liability) under a policy making entry of judgment against the insured a condition precedent to the insurer's liability vel non for the covered amount of the insured's obligation. Apparently, then, the only provision which might directly sustain a third party beneficiary action under the policy involved in the present case would be limited to an action after judgment against the insured, a right not disputed in this litigation.
Conflict is also asserted with Artille v. Davidson, 126 Fla. 219, 170 So. 707 (1936), holding "if there has been no breach of the contract which would create in the insured *721 the present right to maintain an action on the policy, such right cannot accrue to any one else by reason of having a claim against the insured." The fact that Artille involved an indemnity policy does, of course, affect the question of when a breach occurs, but the quoted language is on its face a statement on a point of law in conflict, at least prima facie, with the present decision that a right of action exists in a third party prior to any breach or accrued obligation to pay damages under the insurance contract. At the time suit is instituted against the insured, the insurer does, under the terms of the policy, become obligated to defend on behalf of its insured.
The appellate court in the present case held that Rule 1.210, Florida Rules of Civil Procedure, authorizes direct action against the insurer in this situation by its provision as follows:
Rule 1.210. PARTIES (a) Parties Generally. Every action may be prosecuted in the name of the real party in interest * * *. All persons having an interest in the subject of the action and in obtaining the relief demanded may join as plaintiffs and any person may be made a defendant who has or claims an interest adverse to the plaintiff. Any person may at any time be made a party if his presence is necessary or proper to a complete determination of the cause. * * * (emphasis added)
The initial premise of the opinion is correct to the effect that the policy provision against joinder of the insurer[1] is not conclusive: "* * * we do not feel that a party, corporate or otherwise, can by such provision preclude proper legal action being brought against it, if the facts warrant an action."[2] I believe, however, that the court erred in finding that the facts and policy provisions otherwise warrant an action, and in finding that Rule 1.210, supra, authorizes joinder of any parties who have adverse interests, without recognition of the procedural character of the rule and its necessary limitation to parties with adverse interests which are independently actionable.[3] When the only existing obligation of the insurer under the policy is to defend a claim in behalf of its insured, I am unable to find any cause of action which might be vested in a potential third party beneficiary of the contingent liability features of the policy. The financial responsibility law, Chapter 324, Florida Statutes 1967, relied on by respondent, does not under present conditions place liability insurance contracts in any special statutory classification justifying direct action.[4]
Statutes which permit such an action or joinder have done so without regard to any contrary contractual intent.[5] Examination of the decisions applying these acts indicates the prevailing and more persuasive view to be that substantive contract rights are affected.[6] Even conceding the desirability *722 of some step toward the solution of the numerous and serious problems so fully discussed in the opinion below, the attempt to accomplish this by court rule is manifestly improper and constitutionally beyond our reach.[7]
The majority opinion, in relying solely upon Rule 1.210, supra, and our rule-making power under the Constitution for the conclusion there reached necessarily holds that the Legislature is wholly devoid of power to enact laws prohibiting the joinder of insurance companies as parties defendant under the circumstances presented in this case. This has been a matter which for more than half a century has been recognized by this Court to be within the competence of the Legislature. The cases are legion in which this Court has reversed trial courts for even permitting the suggestion in the presence of the jury that the defendant was insured. Such opinions are, in my judgment, wholly irreconcilable with the idea that we now have the power, by the simple process of adopting a rule of procedure, to permit such an insurer to be made a party to such litigation. This is substantive law  something that only the Legislature may regulate. We are, indeed, treading on sacred ground. Whatever may be my views on what is best  or what the rule or law should be[8]  I do not think we have the right or the power to do that which has been done in the majority opinion.
I dissent.
ROBERTS, J., concurs.
NOTES
[1] "This policy shall not give any right to join the Company in any action to determine the liability of an insured person or organization."
[2] Bussey v. Shingleton, 211 So.2d 593, 596 (1st Dist.Ct.App.Fla. 1968). It seems equally plain, in spite of consideration of the point at length by the court in this case, that a party's concessions or conclusions in other proceedings could leave no real relevance in determining insurers' "interest" in liability litigation.
[3] Kirkpatrick v. Parker, 136 Fla. 689, 187 So. 620, 121 A.L.R. 1481 (1939).
[4] "This does not affect the function and obligation of a liability insurance policy, nor does it change the right, obligation or responsibility of the respective parties involved. * * *" Hayes v. Thomas, 161 So.2d 545, 546 (2d Dist.Ct.App.Fla. 1964).
[5] Appleman, Insurance Law and Practice, Vol. 8, §§ 4861 et seq.; 29A Am.Jur. Insurance §§ 1485-1495 (1960).
[6] "It has been held that, in determining the propriety of a joinder of the insurer, the law of the forum should control, rather than the lex loci delicti." Appleman, supra note 5, at 315. See also Posner v. Travelers Ins. Co., 244 F. Supp. 865 (N.D.Ill. 1965). Cf. Mock v. Maryland Cas. Co., 6 So.2d 199 (La. App. 1942).
[7] Section 3, Article V of the Florida Constitution, limits our rule-making power to "practice and procedure." See also State v. Furen, 118 So.2d 6, 11, 12 (Fla. 1960); and Lundstrom v. Lyon, 86 So.2d 771 (Fla. 1956).
[8] Florida has been free of long delays in the trial and disposition of these cases. I foresee the distinct possibility of a reversal of this situation where, in one trial, all the many facets of the provisions of these policies may be litigated along with the question of damages and liability.