237 So.2d 163 (1970)
BETA ETA HOUSE CORPORATION, INC. OF TALLAHASSEE, Florida, a Nonprofit Florida Corporation, and General Accident Fire and Life Insurance Company, Limited, a Foreign Corporation, Petitioners, Cross-Respondents,
v.
William E. GREGORY, a Minor, by His Mother and Next Friend, Lucy A. Gregory, and Lucy A. Gregory, Individually, Respondents, Cross-Petitioners.
No. 39388.
Supreme Court of Florida.
July 1, 1970.
*164 H.O. Pemberton, E. Harper Field, and Helen C. Ellis, of Keen, O'Kelley & Spitz, Tallahassee, for petitioners, cross-respondents.
Spence, Payne & Masington, Miami, Henderson, Buchanan & Phipps, Tallahassee, and Robert Orseck, Miami, for respondents, cross-petitioners.
Bert Lane, Pensacola, amicus curiae.
ADKINS, Justice.
This cause is here on petition for writ of certiorari supported by certificate of the District Court of Appeal, First District, that its decision reported in 230 So.2d 495, is one which involves a question of great public interest. See Fla. Const. art. V, § 4(2), F.S.A.
The opinion of the District Court of Appeal contains the following language:
"In order that the Bench and Bar may have the benefit of an authoritative decision of statewide application, it shall be our purpose to certify this decision to the Supreme Court as one involving a question of great public interest in order that the purpose and effect of the decisions rendered in the Bussey-Shingleton case may be evaluated and a pronouncement made as to whether (a) the principles announced therein are applicable not only to automobile liability insurance but also to other forms of liability insurance; and, (b) whether the suggested procedure for preserving the substantive law of Florida by ordering separate trials pursuant to Rule 1.270(b), Rules of Civil Procedure, in those cases where the liability insurance carrier is joined as a defendant in a tort action against its insured should be followed by the trial courts of this state." 230 So.2d 500.
*165 A minor sued Beta Eta House and its liability insurance carrier for damages because of the alleged negligence by Beta Eta House in the maintenance of its premises, resulting in personal injuries to the minor plaintiff who was proceeding to the fraternity house for the purpose of attending a Chapter meeting. The insurance carrier was joined as a party defendant under the doctrine of Shingleton v. Bussey, 223 So.2d 713 (Fla. 1969).
The insurance carrier moved for dismissal and the motion was denied. When the motion to dismiss was denied, the carrier filed a petition for common law writ of certiorari with the District Court of Appeal. The petition was denied in the decision and opinion now before this Court for review.
Answering the questions certified to us, we hold as follows:
(a) The principles announced in Shingleton v. Bussey, supra, are applicable not only to automobile liability insurance but also to other forms of liability insurance; and
(b) The trial court may on motion of either party order separate trials pursuant to Rule 1.270(b), Florida Rules of Civil Procedure [30 F.S.A.], in those cases where the liability insurance carrier is joined as a defendant in a tort action against its insured.
The District Court of Appeal in its opinion stated (230 So.2d 500):
"Pursuant to the provisions of this rule the trial court should on the motion of a party order that the issues relating to the cause of action sued upon be first tried under circumstances which exclude any reference to insurance, insurance coverage or joinder in the suit of the insurer as a codefendant. After this trial has been concluded and a verdict rendered for the plaintiff, a second trial confined solely to the issue of insurance coverage should be held if such an issue has been raised. If no such issue is present, judgment against the insurer within policy limits would follow the verdict rendered in the first trial on the merits."
The purpose of Shingleton v. Bussey, supra, was to require the parties to "lay their cards on the table" in discovery proceedings, settlement negotiations, and pre-trial hearings. The existence or amount of insurance coverage has no bearing on the issues of liability and damages, and such evidence should not be considered by the jury.
In the event the carrier denies coverage, this issue may be determined by a separate trial before, as well as after, the trial on the merits. Where the issue of coverage is raised by the carrier and a separate trial is granted on this issue, a question arises as to whether the provisions of Fla. Stat. § 627.0127, F.S.A., relating to attorneys' fees in an action on an insurance policy, are applicable. This question is not before us in the case subjudice.
If coverage is admitted or determined by a prior trial, the carrier is bound by the ultimate judgment in the trial on the merits to the extent of such elements as the validity of the insurance policy and the amount of the judgment. Following the verdict on the merits, judgment against the insurer within the policy limits may be entered.
The separate trial is not necessarily limited to the issue of coverage. The question of whether or not the carrier exercised good faith in the settlement of a claim against the insured could also be determined by a separate trial after the determination of the case on the merits.
The opinion of the District Court of Appeal, First District, as modified, is approved and the writ of certiorari heretofore issued is discharged.
*166 DREW, THORNAL and CARLTON, JJ., concur.
BOYD, J., dissents in part and concurs in part with opinion.
ERVIN, C.J., concurs with BOYD, J., and also dissents in part with opinion.
BOYD, Justice (dissenting in part and concurring in part).
The majority opinion affirms the holding of the District Court of Appeal, First District, that "absent extraordinary circumstances" the trial court should authorize separate trials under Rule 1.270(b) F.R.C.P., for the defendant tortfeasor and his insurer. The rule in question provides as follows:
"The court in furtherance of convenience or to avoid prejudice may order a separate trial of any claim, cross-claim, counterclaim or third party claim or of any separate issue or of any number of claims, cross-claims, counterclaims, third party claims or issues."
The holding of the District Court requires an automatic severance when a liability insurer is codefendant in a suit with its insured "absent extraordinary circumstances." This holding is contrary to our very recent decision in Shingleton v. Bussey.[1] Further, the District Court's decision distorts the law of severance by requiring special treatment of liability insurance carriers not afforded other codefendants. Equal protection and due process are offended by this procedure.
The decision of the District Court impairs the discretion of trial courts in granting of severances and imposes an absolute rule where insurance is involved. This Court in the Bussey case stated that the existence of insurance and coverage should go to the jury and that only where complicated coverage issues exist should there be a separation for the purposes of trial.
The result of the majority opinion, while purporting to extend the Bussey decision to all forms of liability insurance, is actually to completely reverse the remedial aspects of Bussey. The District Court in its opinion states that a procedure requiring automatic severance "would preserve for the plaintiff those desirable benefits flowing from the privilege of being able to bring a direct action against the insurer which are discussed by the Supreme Court in Shingleton v. Bussey, supra."[2] The District Court does not indicate what these "benefits" might be since the result of its holding is to allow any insurance company joined in the suit to obtain severance.
After extensive consideration, argument and research, this Court concluded in Shingleton v. Bussey, supra, that in the absence of a showing that severance was necessary to assure a fair trial, the insurance carrier would participate as a defendant in the trial along with its insured. We specifically held that in our opinion modern juries are sufficiently informed and sophisticated to reach a fair verdict without prejudice or discrimination against an insurance liability carrier. Nothing was shown in the record then nor in the present proceeding to contradict this view.
Only a few months have passed since publication of the Bussey case. The Court is not aware of any ill effect to, or unfair treatment of, insurance companies because of our holding as stated above. If such information should be properly demonstrated then, and only then, should we reconsider and possibly modify our prior holding. Consistency in law is a primary requisite if the legal profession is to survive. We should not issue an opinion as we did in Bussey and then recede from most of it as the majority opinion is doing, without a clear, logical reason. I find no such reason here.
*167 Accordingly, I would concur in the affirmative answer to certified question (a) and dissent from the affirmative answer to certified question (b). Severance should be allowed to liability insurance carriers under Rule 1.270(b) only to the same extent and on the same terms as to any other litigant.[3]
ERVIN, C.J., concurs.
ERVIN, Chief Justice (concurring in part and dissenting in part).
I concur in the majority's conclusion that the principle of Shingleton v. Bussey, Fla. 1969, 223 So.2d 713, vesting an injured plaintiff with a direct cause of action due to controlling rules of law against a liability insurer, notwithstanding a policy contractual provision to the contrary, applies to all types of liability insurance. In this context, I am of the view that the operative feature of the quasi-beneficiary theory of the Bussey case, enunciated there as raising by operation of law an intent to benefit an injured third party plaintiff, is equally amenable, for reasons and policy considerations examined therein, to all forms of liability insurance, and is not confined merely to the peculiarities of automobile liability insurance.
However, for reasons assigned by Mr. Justice BOYD and for the additional reasons hereinafter discussed, I dissent to that portion of the majority opinion which answers the second certified question in the affirmative and authorizes implementation, automatically at the request of an insurer, of the separate trial procedure of F.A.R. 1.270(b).
In this latter particular, it seems to me the majority has done an about-face from Bussey (in which the First District Court of Appeal pioneered and "blazed" the route originally) virtually revitalizing the notion there put to rest that the interjection of insurance and the amount of coverage thereof before the jury automatically prejudices the insurer in defending the action brought by the plaintiff.
The fact determining purpose of the jury process in personal injury litigation is, first, to ascertain whether the plaintiff was injured as a proximate result of the wrongful conduct of the defendant tort feasor; and second, to realistically assess the monetary sum necessary and available to render the plaintiff whole as far as possible in terms of putting him in the position he would have been in had he not been injured.
In terms of modern reality, I do not believe joinder of the insured and insurer before the jury improperly injects the "deep pocket" theory to the prejudice of the insurer. The psychological speculation indulged in by certain appellate courts in this relation which skeptically places but little faith in the integrity of the jury system now seems misplaced. The universality of insurance protection explodes the out-moded concept that to avoid prejudice an insured's applicable insurance must be isolated from the jury's knowledge. The feature of insurance has become an integral factor in the modern jury's actual approach to the discharge of its role in assessing personal injury litigation issues, notwithstanding contrary theoretical considerations. It is general public knowledge that in a world fraught with personal risks most of our citizens have the protection of insurance. The terms "carriers" and "adjusters" are by-words with the public. When an accident or injury occurs resort to the insurer for adjustment or satisfaction of the loss is the common expectation. Furthermore, it is generally understood that if litigation on the loss ensues, the insurer *168 will be on hand to protect its interests and often defend the insured.
Such being the practical nature of the close relation between the actual workings of the jury process and the prevalent incidence of insurance coverage, I think a meaningful inquiry should focus on whether it would be better to continue to attempt from appellate level to enforce such traditional impractical and illusory theoretical limitations or to recede from same in favor of a policy at trial which frees the settlement of the claim through a jury process which openly conforms to existing realities. A majority of this Court heretofore, in Bussey, aligned in favor of the latter position. We stated there:
"In reaching the foregoing conclusion, we are cognizant that the primary reason advanced in those jurisdictions which have sustained `no joinder clauses' in the area of liability insurance is that such a clause serves to prevent prejudice to the insurer through prophylactic effect of isolating from the jury's consideration any knowledge that coverage for the insured exists. Such a result is deemed desirable because of the notion that a jury is prone to find negligence or to augment damages, if it thinks that an affluent institution such as an insurance company will bear the loss. See Appleman, 8 Insurance Law and Practice, § 4861. While we will not go so far as to assert that the above proposition has been all but obliterated by the more recent indications to the effect that the injection of insurance does not operate to increase the size of jury verdicts, we do think the stage has now been reached where juries are more mature. Accordingly, a candid admission at trial of the existence of insurance coverage, the policy limits of same, and an otherwise aboveboard revelation of the interest of an insurer in the outcome of the recovery action against insured should be more beneficial to insurers in terms of diminishing their overall policy judgment payments to litigating beneficiaries than the questionable `ostrich head in the sand' approach which may often mislead juries to think insurance coverage is greater than it is." Id. at 718.
The ostrich-like approach which the majority today prefers to restore will not serve to eliminate the impact of insurance on the jury process. On the contrary, as suggested by the language quoted above, this approach serves only to increase a jury's propensity to speculate in making whatever adjustment it normally makes by taking into consideration the possibility of the insurance feature. Furthermore, this superstitious blinding of reality processes will augment trial proceedings and expenses, and delay settlements and final disposition of claims. Better it would be to attempt to eliminate furtive conjecture on the insurance factor by fully disclosing its presence to the jury. Such disclosure, I think, would tend to encourage juries to adopt and implement a more honest analysis and consideration of the insurance factor with the result that in most cases the impact of this factor will be de-emphasized. Furthermore, complete disclosure of the insurance feature to the jury would seem to increase the probability that prejudice generated by insurance would be detectible through a proper utilization of methods presently available for challenging and testing the adequacy of a jury's verdict. In any case, since a commanding policy consideration for the result upheld in Bussey was to conform the presence of liability insurance and liability insurers to the realities of personal injury litigation, and simultaneously conform to the applicable rules of law in bringing the contesting parties to a single concluding adjudication, I do not believe we should circumscribe the scope of the modernization undertaken in Bussey on the illusory notion that the strictures today imposed will advance and preserve the purity of the jury process.[1]
I regret to see old myths and psychological speculations of imagined prejudice reemerge with approval at the appellate level obfuscating modern reality concerning insurance *169 coverage in personal injury actions and blinding juries to essential facts known to trial judges and counsel for litigants.
BOYD, J., concurs.
NOTES
[1] 223 So.2d 713 (Fla. 1969).
[2] 230 So.2d 459, 500 (Fla.App. 1st 1970).
[3] Vander Car v. Pitts, 166 So.2d 837 (Fla. App.2d 1964); Bowen v. Manuel, 144 So.2d 341, 343 (Fla.App.2d 1962): "When the proper administration of justice makes it imperative, the trial courts of this state may, in their discretion, order the separate trial of the several issues in a cause. It is our view, however, that this should be the exception rather than the usual practice."
[1] 23 Vand.L.Rev. 631 (1970).