539 So.2d 1153 (1989)
PENSACOLA JUNIOR COLLEGE, Appellant,
v.
Cynthia Elizabeth MONTGOMERY, Appellee.
No. 88-1077.
District Court of Appeal of Florida, First District.
February 28, 1989.
*1154 Danny L. Kepner, of Shell, Fleming, Davis & Menge, Pensacola, for appellant.
W.H.F. Wiltshire, Gregory D. Smith, and Kathryn E. Errington, of Harrell, Wiltshire, Swearingen, Wilson & Harrell, P.A., Pensacola, for appellee.
WIGGINTON, Judge.
Pensacola Junior College and Cynthia Montgomery appeal and cross appeal, respectively, a final judgment finding that PJC had total insurance coverage of $150,000 and that the jury verdict should be reduced by the amount of money PJC had already paid to Montgomery in the total sum of $28,490.69. Because we find that the trial court erred in construing the insurance policies without the joinder of the insurers, as well as failed to give PJC proper credit for its payment of Montgomery's medical bills, we reverse.
Pensacola Junior College is a governmental entity subject to the limited waiver of sovereign immunity provided in section 768.28, Florida Statutes. In 1979, an organization was formed among the community colleges called the Florida Community College Risk Management Consortium of which PJC was a member. In 1980, an agreement was reached between the consortium and Arthur J. Gallagher & Co., along with its subsidiary, Gallagher-Bassett Insurance Service, to handle claims, adjusting, and payments out of the consortium's loss fund. This fund was initially created by contributions from each college and the initial assessment was set at 1.9 million dollars. General liability claim payments from the loss fund were limited to the statutory waiver of sovereign immunity at the time of $50,000 per claim and $100,000 per occurrence.
Thereafter, the consortium sought to procure insurance to cover catastrophic losses or a large aggregate of losses that might deplete the fund. The insurance that was procured was placed with Lloyd's of London, with two other companies sharing the risk. The record reflects that it was the consortium's intent that the Lloyd's policy would activate only once the self-insured fund was depleted to an aggregated low, whereafter the Lloyd's policy would pay in regard to third party claims the statutory limit of $50,000.
In 1981, when the statutory waiver of immunity in section 768.28 was doubled to $100,000, the consortium allegedly purchased a liability policy from Pine Top Insurance Company covering the extra $50,000 per claim.
The underlying action was filed by Cynthia Montgomery, a student at PJC, seeking damages for injuries sustained from a fall on a sidewalk allegedly negligently maintained by PJC. PJC answered, setting forth as affirmative defenses comparative negligence and limited liability based upon section 768.28, Florida Statutes (1981), as amended. The case was tried before a jury in December 1986 and a verdict was rendered finding PJC liable and awarding Montgomery damages in the net amount (after reduction for 7.5 percent comparative negligence) of $208,125.
*1155 Following argument of PJC's motion for new trial, Montgomery orally raised the issue of excess coverage that would further waive PJC's statutory immunity to the extent of coverage. See section 286.28, Fla. Stat. (1981); and also Avallone v. Board of County Commissioners of Citrus County, 493 So.2d 1002 (Fla. 1986).[1] A post-trial hearing was then held before the court without a jury in February 1987 to determine: (1) whether PJC had purchased liability insurance applicable to Montgomery's claim in excess of the sovereign immunity statutory limit of $100,000; and (2) whether PJC was entitled to a credit for $28,490.69 paid on its behalf from the consortium's fund toward Montgomery's medical bills prior to suit. Ultimately, three hearings were held concluding in June 1987.
Before any testimony was given at the first hearing on these issues in February, PJC moved to dismiss the proceeding for failure to join the insurers as indispensable parties. In denying PJC's motion, it appeared that the trial court was of the opinion not only that PJC had waived this issue by not raising it prior to the jury trial, but also that the insurance companies were not indispensable parties to the excess insurance issue.[2]
At the conclusion of the third hearing, the trial court expressed the opinion that the total insurance coverage provided to PJC and applicable to Montgomery's claim was $150,000. The court also declared that no credit would be allowed to PJC for the $28,490.69 paid on Montgomery's medical bills except as against the jury award of $208,125.
On appeal, PJC raises three points arguing that the court erred in attempting to construe the insurance policies without the joinder of the insurers, that it failed to construe the insurance policies to fulfill the intent of the contracting parties, and that it failed to give proper credit for the $28,490.69. Montgomery cross-appeals arguing that the court erred in its determination of the extent of coverage afforded by the Lloyd's of London policy. Because we conclude that the insurance company should have been joined as indispensable parties in this case, we need not reach the issues on appeal and cross appeal regarding the trial court's construction of the policies. We also agree with PJC that the court erred in failing to give proper credit for the amounts paid for Montgomery's medical bills.
As to the latter issue regarding credit, we agree with PJC that the sum of $28,490.69 should be applied to whatever amount for which PJC may be found statutorily responsible. Normally, absent a showing of waiver to the extent of excess coverage, the credit would be applied against the standard $100,000 waiver of *1156 sovereign immunity under section 768.28. As PJC aptly observes, the trial court's ruling would increase its waiver of immunity in direct contravention of the provisions of section 768.28(5), Florida Statutes. We reiterate that the statutory waiver of sovereign immunity "must be clearly expressed and strictly construed... ." See Gerard v. Department of Transportation, 472 So.2d 1170, 1172 (Fla. 1985) (DOT held to be entitled to a setoff against its statutory waiver of immunity in the total amount paid by the codefendant city's insurer since section 768.28(5) imposes a cumulative per-incident limitation on aggregate recovery regardless of whether source of payment is single governmental entity or multiple governmental entities).[3] Accordingly, on remand, following the determination of PJC's excess waiver of its sovereign immunity, if any, under section 768.28, the trial court shall apply the $28,490.69 against that amount and not against the total jury award.
Turning to the primary issue before this Court, we conclude that under the instant circumstances, where the amount of coverage afforded PJC by its insurers determines the amount of collectible damages for which PJC is responsible, we conclude that the insurers should have been joined as indispensable parties during the subsequent hearing on excess coverage. In Avallone v. Board of County Commissioners of Citrus County, the supreme court held that the "purchase of tort liability insurance by a government entity, pursuant to section 286.28, constitutes a waiver of sovereign immunity up to the limits of insurance coverage and that this contingent waiver is independent of the general waiver in section 768.28." 493 So.2d at 1004-1005. Whether a party or parties are to be considered indispensable to the trial turns on whether their presence is "so essential to a suit that no final decision can be rendered without their joinder." Hertz Corporation v. Piccolo, 453 So.2d 12, 14 at n. 3 (Fla. 1984).
In the instant case, Montgomery argued, and the trial court apparently agreed, that PJC had waived the indispensability defense by failing to argue it during the trial on the merits. However, we agree with PJC that the insurers were not indispensable parties at the time of the jury trial. Rule 1.140(h), Florida Rules of Civil Procedure, provides in paragraph (2) that the defense of failure to join an indispensable party "may be raised by motion for judgment on the pleadings or at the trial on the merits in addition to being raised in either a motion under subdivision (b) or in the answer or reply." (Emphasis added.) We agree with PJC that since the "trial on the merits" of the excess coverage was not held until February 1987 following the jury trial, it was at that point that PJC was entitled to raise the defense of failure to join an indispensable party.[4]
Since we have held that PJC did not waive its defense of failure to join indispensable *1157 parties, we now hold that the insurance companies were indispensable parties for purposes of the subsequent hearing on the issue of excess coverage. Again, as noted earlier, because the amount of excess coverage afforded by the consortium determines the amount of collectible damages for which PJC is responsible under section 286.28 and Avallone, it was absolutely essential in the instant case in order to resolve the issue of excess coverage to have the insurance companies joined to facilitate construction of the policies. Accordingly, we hold that the trial court erred in attempting to construe the insurance policies without the joinder of the insurers. However, since at the time PJC's attorney moved to dismiss the claim for excess coverage on the basis of failure to join indispensable parties he also conceded that PJC would be agreeable to the court's allowing Montgomery to file an amended complaint joining these parties rather than having the court dismiss the cause, we reverse the trial court's ruling but remand for further proceedings to allow Montgomery to amend her complaint naming the insurance companies as parties.
REVERSED and REMANDED for further proceedings consistent with this opinion.
WENTWORTH and THOMPSON, JJ., concur.
NOTES
[1] Subsequent to the supreme court's decision in Avallone, holding that the purchase of tort liability insurance by a governmental entity pursuant to section 286.28 constituted a waiver of sovereign immunity up to the limits of insurance coverage independent of the general waiver contained in section 768.28, the legislature repealed section 286.28 and amended section 768.28 to clarify its intent that the purchase of liability insurance does not constitute a further waiver of sovereign immunity. See Ch. 87-134, §§ 3, 4, Laws of Florida. However, the legislature's repeal of section 286.28 does not apply to the instant case. In section 5 of that act, it was provided that it would not apply to any cause of action to which a final judgment had been rendered or in which the jury had returned a verdict as of the date on which the act became law, June 30, 1987. Since the jury had returned a verdict in this cause prior to June 30, 1987, the act is not applicable to the instant case.
[2] The following colloquy was had between the trial court and PJC's attorney, Mr. Menge:

THE COURT: So I don't know where you [PJC] get the notion that it can be raised post-verdict, then. To me, reading the rule there, it's a waiver if it's not raised earlier.
MR. MENGE: Well, Judge, I think today we're here for a trial on that particular issue. I think this is the hearing on that particular issue.
THE COURT: No. We're wasting time. I'm not going to  I'm not going to follow that line of argument. I think if there is a coverage question, then you have a right to independent action to seek declaratory relief against the carrier or the insurance company involved.
What we need to do now is take some  get into some evidentiary matters and try to see precisely what the  determine the existence of coverage and the amount of coverage involved ... [T.A. 52-53].
[3] We also agree with PJC that section 768.76, the collateral source rule, does not apply in the instant case. The funds paid by PJC directly to Montgomery for her medical care under its liability reserves does not fall within the statutory definition of a "collateral source." Moreover, section 768.76 was created under chapter 86-160, Laws of Florida, which, in sections 49 and 50, provided that the entirety of part III of chapter 768  which includes section 768.76  applies only to causes of action arising on or after July 1, 1986.
[4] PJC's alternative argument  that the nonjoinder statute, section 627.7262, Florida Statutes, prevented the filing of a motion to dismiss until the trial was concluded and judgment was entered against the insured  is inapplicable to the facts of the case at bar since the record plainly established that Montgomery's injury occurred in January 1982 and the nonjoinder statute did not become effective until October 1, 1982. See VanBibber v. Hartford Accident & Indemnity Insurance Company, 439 So.2d 880, 881 (Fla. 1983). Thus, as noted in VanBibber, the supreme court's earlier decision in Shingleton v. Bussey, 223 So.2d 713 (Fla. 1969) would apply authorizing simultaneously a suit in tort against a tort-feasor and a claim against that tort-feasor's insurance company. However, Shingleton did not make the joinder of the insurance company mandatory but only permissive. It is also clear from the Shingleton decision that an insurance company is not an indispensable party during the trial on the merits on the issue of the liability of the insured. See also O'Donnell v. Chamberlain, 372 So.2d 191 (Fla. 3d DCA 1979). In fact, the type of hearing that was subsequently held following the trial on the merits in the instant case was expressly recognized in Shingleton when the supreme court observed that

... [i]t is not altogether improbable that situations may arise where an injured third party has a very real interest in promptly aligning the insurer with the insured in a recovery action in order to timely adjudicate all questions concerning the coverage supplied the insured by the insurer... . Delays of the insured in filing proof of claim, claims of excess or other insurance, claims of misrepresentation, failure to seek early arbitration, and a variety of other defenses growing out of policy provisions can be asserted vis-a-vis the liability of the insurer against the insured which may operate, and often do, to defeat recovery by the injured third party beneficiary... .
If it should clearly appear in pretrial procedures that joinder of the insured interposes issues between insured and insurer in particular case situations likely to unduly complicate trial of the questions pertaining to the liability of the insured to the injured third party and commensurate damages to be awarded, it would be a simple process under our liberal civil rules for the trial judge on timely motion to sever such complicating issues between insurer and insured for separate trial or adjudication. But such separation for adjudication of issues between insurer and insured would not remove from the case the identity of all parties joined nor their claims and defenses in their right to participate and protect their respective interests.
223 So.2d at 719-720. Of course, in the instant case the issue of excess coverage did not arise until post-trial, necessitating at that point a decision on the court's part to hold a separate hearing and to join the insurers.