620 So.2d 780 (1993)
Catherine A. COLFORD, Appellant,
v.
BRAUN CADILLAC, INC., etc., et al., Appellees.
No. 92-936.
District Court of Appeal of Florida, Fifth District.
April 16, 1993.
Rehearing Denied June 3, 1993.
*781 Richard L. Purtz and John B. Cechman of Goldberg, Goldstein & Buckley, P.A., Fort Myers, for appellant.
Robert E. Bonner and Melinda G. Baum of Eubanks, Hilyard, Rumbley, Meier & Lengauer, P.A., Orlando, for appellee Braun Cadillac, Inc.
George A. Vaka and Nancy A. Lauten of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for appellees Jerry L. Harn and Michael Alan Roberts.
Jennings L. Hurt, III, and Kathleen Smyth Cumming of Rissman, Weisberg, Barrett & Hurt, P.A., Orlando, for appellee Hartford Ins. Co. of the Midwest.
PETERSON, Judge.
The issue raised by the appellant, Catherine A. Colford, an insured under the underinsured motorist coverage portion of an insurance policy issued by appellee, Hartford Insurance Company of the Midwest (Hartford), is whether an insured who sues the underinsured motorist carrier and the alleged underinsured tortfeasors in a civil action pursuant to section 627.727(6), Florida Statutes (1991), may be prevented from disclosing to a jury that the underinsurance coverage is available to pay a verdict favorable to the insured. We hold that she may be prevented from such disclosure.
Our decision complements those of two other districts construing section 627.727(6). In Wardrop v. Government Employment Insurance Company, 567 So.2d 1012 (Fla. 3d DCA 1990), review denied, 581 So.2d 168 (Fla. 1991), the third district held that joinder of both the tortfeasor and the underinsured motorist carrier is mandatory in a civil suit initiated by the carrier's insured when the carrier rejects a settlement offer by the tortfeasor's liability insurer. In Allstate Insurance Company v. Wood, 535 So.2d 699 (Fla. 1st DCA 1988), counsel for an insured revealed to the jury twice that his client had purchased underinsured motorist coverage. The trial court sustained the carrier's objections to these revelations and made curative comments to the jury. In affirming the judgments against the carrier because it failed to move for a mistrial based upon the revelations, the court stated:
It is true that the existence or amount of insurance coverage has no bearing on the issues of liability and damages and should not be considered by the jury. However, reference to insurance may be rendered harmless by the trial court's curative instruction to the jury.
Id. at 700 (citations omitted). Thus, under current Florida law, although an underinsured motorist carrier may be joined as a party to the litigation after that carrier has rejected a settlement offer made by a tortfeasor's liability carrier, it does not naturally follow that the jury need be apprised of the joinder or of the availability of insurance proceeds to fund a verdict awarding damages.
This court also has expressed its concern for the effect that knowledge of insurance coverage by a jury would have on the verdict. In State Farm Fire and Casualty Company v. Nail, 516 So.2d 1022 (Fla. 5th DCA 1987), this court considered the question of whether it was proper to consolidate a personal injury action and a declaratory action brought by the liability insurer to determine an issue of coverage of the insured defendant in the personal injury action. In ruling that the consolidation was improper, this court stated:
The legislature, in enacting the nonjoinder statute [§ 627.7263, Fla. Stat.], has apparently found that those concerns (the possibility, inter alia, of inconsistent verdicts in two separate actions) do *782 not overcome the danger that jurors may be influenced if they know the defendant has liability insurance coverage.
Id. at 1023. We recognize that, in Nail, this court was considering section 627.7263 a nonjoinder statute, and, in the instant case, we are considering section 627.727(6) a required joinder statute. But we believe that the expressed policy against revelation of insurance coverage to a jury overcomes the added factor that the underinsured motorist carrier is made a party to the litigation.
The long-term policy of this state against disclosure to a jury of insurance coverage was temporarily weakened by the supreme court in Shingleton v. Bussey, 223 So.2d 713 (Fla. 1969), which, under a third-party beneficiary theory, allowed direct actions against a tortfeasor's liability insurance carrier by an injured claimant. The court stated:
In reaching the foregoing conclusion, we are cognizant that the primary reason advanced in those jurisdictions which have sustained "no joinder clauses" in the area of liability insurance is that such a clause serves to prevent prejudice to the insurer through the prophylactic effect of isolating from the jury's consideration any knowledge that coverage for the insured exists. Such a result is deemed desirable because of the notion that a jury is prone to find negligence or to augment damages, if it thinks that an affluent institution such as an insurance company will bear the loss. See Appleman, 8 Insurance Law and Practice, § 4861. While we will not go so far as to assert that the above proposition has been all but obliterated by the more recent indications to the effect that the injection of insurance does not operate to increase the size of jury verdicts, we do think the stage has now been reached where juries are more mature. Accordingly, a candid admission at trial of the existence of insurance coverage, the policy limits of same, and an otherwise aboveboard revelation of the interest of an insurer in the outcome of the recovery action against insured should be more beneficial to insurers in terms of diminishing their overall policy judgment payments to litigating beneficiaries than the questionable "ostrich head in the sand" approach which may often mislead juries to think insurance coverage is greater than it is.
Id. at 718.
The revolutionary effect of Bussey was diminished within one year by the supreme court in Beta Eta House Corporation, Inc. of Tallahassee v. Gregory, 237 So.2d 163 (Fla. 1970), when it considered the district court's decision[1] that allowed the trial court, upon motion, to order separate trials of liability/damages and insurance coverage matters in order to keep from the jury the knowledge of insurance coverage. The first district's opinion commented on the earlier Bussey decision:
We consider it proper and necessary to point out that the decisions of this court in Bussey v. Shingleton, supra [sic], and of the Supreme Court in Shingleton v. Bussey, supra [sic], were not intended to nor do they have the effect of changing the substantive law of this state. These decisions have merely created a procedural innovation which permits a direct action against a liability insurance carrier as a codefendant in a suit brought against its insured where no such action previously existed. Such innovation does not diminish in any manner the obligatory judicial concern to preserve the purity of the jury verdict and to prevent irrelevant factors from being injected into the trial of a case which may in any manner prejudice the jury in arriving at a fair and impartial verdict on the issues presented for decision. It is because of such concern that the substantive law of our state has consistently prohibited the injection into the trial of a negligence action any reference to insurance or insurance coverage held by the defendant tort-feasor.
Beta Eta House Corp., Inc. of Tallahassee v. Gregory, 230 So.2d 495, 499-500 (Fla. 1st DCA 1970) (footnote omitted). In approving *783 with modification the first district's opinion, the supreme court stated, "The existence or amount of insurance coverage has no bearing on the issues of liability and damages, and such evidence should not be considered by the jury." Gregory, 237 So.2d at 165.
It can be argued that most jurors sense the presence of insurance coverage in a case and that maintaining an air of secrecy accomplishes nothing. Judge McNulty addressed both sides of the argument in Utica Mutual Insurance Company v. Clonts, 248 So.2d 511 (Fla. 2d DCA 1971), while analyzing the Bussey and Gregory opinions.
Now, we can agree that the injection of liability insurance matters into a tort action is no longer ipso facto prejudicial as a matter of law. But does that mean to say, as a matter of law, it is always nonprejudicial? As a matter of pragmatic truth, it is almost impossible to determine whether it is prejudicial or not except in those cases in which, after trial, it is clear from the amount of damages awarded that the jury verdict is an "insurance verdict." As to the issue of liability, only the Divine can measure the influence the injection of liability coverage may have on a jury, particularly on close questions of negligence and contributory negligence. We think it can be agreed, nonetheless, that it may be prejudicial, albeit concededly less likely now than of yore. The trouble is we rarely know which cases have been contaminated.
Accordingly, the problems inherent in the matter before us ought not be resolved by amorphous speculation as to whether the injection of insurance in a tort action is or is not likely to prejudicially influence the jury. Rather, the dispositive question should be, and in the final analysis is, whether any aspect of insurance is relevant to the triable issues remaining in the case.
Id. at 513 (footnotes omitted).[2]
The potential harm inherent in allowing knowledge of insurance to creep into trials is not limited to the influence that it may have upon a jury verdict; it includes the extent to which innovative counsel may proceed to expand the focus upon the idea of coverage and availability of insurance funds. Instead, the focus should be on first determining liability based upon the actions or inactions of the litigants and then identifying the damages incurred by the injured litigant and the value of those damages, not the identity or wealth of one who is to fund an award of those damages.
Colford argues that the jury was misled by Hartford's counsel and that he committed "fraud upon the jury" by representing to the jury that he represented Jerry Harn, a tortfeasor who admitted liability and who was, in Colford's opinion, an underinsured motorist. She further argues that Hartford's counsel assumed a position of conflict of interest by that representation to the jury because, if a verdict had been rendered in excess of Harn's liability insurance limits, Hartford would then have a subrogation claim against Harn, individually. The claim would be against the same person that Hartford's counsel told the jury he represented. We do not perceive that feature of the concept of uninsured or underinsured motorist coverage to be a conflict of interest. Unfortunately, it is simply the nature of that type of coverage. A claim by an insured against his uninsured or underinsured insurance carrier often creates conflict when they cannot agree upon the responsibility of the alleged tortfeasor and the extent of the damages. The conflict places the insurance carrier in the position of assuming the defenses of the tortfeasor.
We also note that no questions regarding the insurance policy were raised in this *784 case; the issues were confined to Colford's damages, the proximate cause of her injuries, and the individuals responsible for her damages. We fail to see how the identification of Hartford as a party could have had anything but an improper influence upon the jury.
We find no merit in the other issues raised by Colford.
AFFIRMED.
DIAMANTIS, J., concurs.
DAUKSCH, J., concurs in conclusion only, without opinion.
NOTES
[1] Beta Eta House Corp., Inc. of Tallahassee v. Gregory, 230 So.2d 495 (Fla. 1st DCA 1970).
[2] An example of an "insurance verdict" as described by Judge McNulty may be found in Auto-Owners Insurance Company v. Dewberry, 383 So.2d 1109 (Fla. 1st DCA 1980), where counsel not only mentioned the existence of insurance coverage but also mentioned the extent thereof and the jury returned a verdict in the exact amount of the policy limits which had been repeatedly mentioned throughout the trial proceedings, during voir dire, opening argument, and closing argument.