130 So.2d 282 (1961)
Ruth A. DOUGLASS and Frederick Douglass, Appellants,
v.
Robert V. GALVIN, Appellee.
No. 1952.
District Court of Appeal of Florida. Second District.
May 12, 1961.
Rehearing Denied June 5, 1961.
Vernon W. Evans, Jr., and James E. Lehan of Shackleford, Farrior, Stallings, Glos & Evans, Tampa, for appellants.
George W. Phillips of Bucklew, Ramsey & Phillips, Tampa, for appellee.
SMITH, CULVER, Associate judge.
The appellants here were defendants below, appellee being the plaintiff. The parties will be referred to as they stood in the trial Court. This action arose out of an automobile accident, the plaintiff being a guest passenger in an M G sports car, owned by defendant, Ruth A. Douglass, and being driven at the time by the Defendant, Frederick Douglass, he son. The accident occurred a little after midnight, on Old Combee Road, about 2 1/2 miles north of Lakeland. This road extends off from State Road 33. The Plaintiff and Defendant-driver had started out with the intention of getting something to eat, but it was decided that the driver would demonstrate the performance of the car. They proceeded north from Lakeland on State Road 33, *283 and after first turning the car in circles, where there was no other traffic, continued to drive north, a distance of about two miles. They were then stopped by a Highway Patrolman, who had been following them, and who thought that the M G had attained a speed of approximately 100 m.p.h. The Patrolman gave Defendant-driver a ticket and warned him to take it easy. During the conversation between the patrolman and the driver, the Plaintiff sat in the right front seat, made no effort to get out, and said nothing. After the conversation was finished, both vehicles proceeded towards Lakeland, at a lawful rate of speed. After a short distance, Defendant turned off on Old Combee Road, the Patrolman continuing on towards Lakeland. This road was asphalt, 16 to 18 feet wide and had a wavy contour. The shoulders were in poor condition. The road was straight from State Road 33 to the point where the accident occurred, a distance of about 9/10's of a mile. There were no signs warning of a curve or specifying any particular speed. The road curved to the driver's right. Defendant, after turning onto this road, proceeded, according to his testimony, at a speed of from 60 to 65 m.p.h. When he came to the curve he did not apply brakes, but down-shifted. The left wheels of the M G went off the pavement on the left, or outside of the curve, it having been slowed down to 50 or 55 m.p.h., according to Defendant. All four wheels then left the pavement, but the car followed around the curve for approximately 100 feet, when it turned over. It then traveled 51 feet, turning over twice, and came to rest against a tree. There is conflicting evidence concerning the approach of headlights around the curve from the opposite direction, and on the wrong side of the road. The Defendant-driver had been on this road once or perhaps twice before. There is no evidence that either Plaintiff or Defendant had been drinking.
The trial of the cause resulted in a jury verdict for the Plaintiff, upon which a Final Judgment was entered. This appeal is taken from that Judgment for Plaintiff.
Defendants' first point relied upon for reversal is whether there was sufficient evidence for the case to be submitted to a jury. This case is controlled by the provisions of the Florida Guest Passenger Statute, Sec. 320.59, Florida Statutes, F.S.A. Defendants moved, at the trial for a directed verdict, both at the close of Plaintiff's evidence, and at the close of all of the evidence, on the ground that there was a lack of proof of gross negligence. Both motions were denied. Counsel for Defendants, in their brief, very fairly state that the facts must be viewed in the light most favorable to the Plaintiff. There being some conflict concerning the evidence of approaching headlights, this must be disregarded and the question must be resolved without consideration of any conflicting evidence.
There have been many decisions under the Guest Statute and yet, every case must stand or fall on its own facts. Definitions of gross negligence are difficult to give and it is even more difficult to apply them to any given set of facts. The controlling case in this state, as to Guest Passenger cases, and the degree and type of negligence involved in them, is the case of Carraway v. Revell, Fla. 1959, 116 So.2d 16, 22. In this case the Supreme Court of Florida recognized the great difficulty encountered in attempting to draw a distinct line between simple and gross negligence, and stated that perhaps no rule could ever be devised which would definitely separate one from the other. After a thorough discussion of the subject the Supreme Court stated:
"* * * We hold that a guest under the statute may not lawfully recover from an owner or operator of a vehicle for simple or ordinary negligence; that he may recover for gross negligence which is that kind or degree of negligence which lies in the *284 area between ordinary negligence and wilful and wanton misconduct sufficient to support a judgment for exemplary or punitive damages or a conviction for manslaughter. In doubtful cases, the question of whether such negligence is ordinary or gross is, as we have heretofore held, one which under appropriate instructions should be submitted to the jury."
Following this, the Court defined simple and gross negligence in the following manner:
"`We think the rule which would more nearly solve the problem than any other would be one which recognized that simple negligence is that course of conduct which a reasonable and prudent man would know might possibly result in injury to persons or property whereas gross negligence is that course of conduct which a reasonable and prudent man would know would probably and most likely result in injury to persons or property. To put it another way, if the course of conduct is such that the likelihood of injury to other persons or property is known by the actor to be imminent or "clear and present" that negligence is gross, whereas other negligence would be simple negligence.'"
We must now apply the facts outlined herein to the holding of Carraway v. Revell. We believe they justify a submission to the jury. We are not unmindful of the rule that excessive speed alone is not sufficient, but other factors appear in the instant case. Defendant driver had been over this road before, raising a question as to whether or not he should have been charged with knowledge of its characteristics, and of the nature of the curve itself. Although the testimony as to speed given by the Defendant is all that is contained by the record, other conclusions might lawfully be drawn from the physical facts shown by the evidence. Was the Defendant-driver's course of conduct that which a reasonable and prudent man would know would probably and most likely result in injury to persons or property? The answer to this question would seem to be involved in some doubts either way. The case of Carraway v. Revell (supra) holds that in doubtful cases, the question of whether the negligence is ordinary or gross is one which should be submitted to the jury, under appropriate instructions.
Defendants' second point questions the correctness of the trial Court's denial of their Motion for Directed Verdict made at the close of all the evidence, on the grounds of proof, as a matter of law, of Plaintiff's contributory negligence and assumption of risk. The substance of their argument is that Plaintiff was with Defendant-driver when he drove at a speed of approximately 100 miles per hour, and when he was stopped by the Highway Patrolman, he should have gotten out of the M G, since he then could have returned to Lakeland in the patrol car. This contention might reasonably be made, but, on the other hand, it would seem that reasonable men might conclude that, Defendant having been warned, it could be anticipated that he would drive in a prudent manner thereafter, especially since the Patrolman was following when they headed back towards town. There is no evidence that Plaintiff had an opportunity to leave the car from the turn-off to the point of the accident. This would appear to be a question upon which reasonable men could differ, and it was, therefore, properly submitted to the jury.
Defendants' third point is whether or not the trial Court erred in denying their Motion for a New Trial and Motion for a Mistrial on the grounds that insurance was injected into the trial of the case.
During the course of the trial, Plaintiff's counsel placed a witness on the stand and the following question was asked during the course of his examination:
"Q. Now then, after that occasion, after that occasion, or after this by the *285 bedside there in the hospital, when did you next learn that that particular version about the lights was actually, you might say, carried out, by Mr. Douglass, when did you learn that?"
To this question the witness answered:
"A. I believe it was either when the insurance adjustor came or when the officer came to give him the ticket."
Defendants' counsel immediately moved for a mistrial. Plaintiff's attorney said he had thought the witness would answer by saying that he had first learned about Defendant-driver's alleged fabrication immediately prior to the last trial of the case. The Court overruled Defendants' Motion on the ground that there was no evidence that Plaintiff's counsel purposely brought insurance into the case. The Court offered to instruct the jury to disregard insurance, but was requested by Defendants' counsel not to do so because it would serve no useful purpose.
In the case of Carls Markets, Inc. v. Meyer et al., Fla. 1953, 69 So.2d 789, 793, the Supreme Court stated:
"We adhere to the principle that if insurance is inadvertently mentioned, or information about insurance is volunteered, or even if such testimony is attempted to be introduced and the court upon objection immediately acts to prevent further transgression of the rule and to caution the jury to disregard the testimony the trial need not be discontinued."
In Luster v. Moore, Fla. 1955, 78 So.2d 87, 89, the Court held:
"No hard and fast rule can be laid down on questions of this kind. Each case must be judged on its own facts and the conduct of counsel."
In the instant case there is no indication that the subject of insurance was purposely injected into the trial. It does not appear that there was any improper conduct of counsel in this connection. The trial Judge offered to instruct the jury to disregard insurance, but was requested not to do so. Finally, we cannot conclude, from the record, of this appeal, that the verdict of the jury was influenced by the answer complained of by Defendants. The trial Court did not commit reversible error by denying the Motion for a Mistrial.
The Judgment entered by the Court below is hereby affirmed.
ALLEN, C.J., and KANNER, J., concur.