247 So.2d 83 (1971)
HARTFORD ACCIDENT AND INDEMNITY COMPANY, a Corporation, Regina Marie Heltman Angley and James Angley, Appellants,
v.
Edna R. MYERS and Dale E. Myers, Her Husband, Appellees.
No. 70-366.
District Court of Appeal of Florida, Second District.
April 7, 1971.
Rehearing Denied May 5, 1971.
*84 Ray Ulmer, Jr., of Roney, Ulmer, Woodworth & Jacobs, St. Petersburg, for appellants.
William R. Hapner, Jr., of Rood & Hapner, Tampa, for appellees.
HOBSON, Judge.
Appellants above named, defendants in the trial court, appeal from a final judgment entered on a jury verdict in favor of appellees, plaintiffs in the trial court, awarding them $20,800.00 and $2,500.00 respectively. The parties will be referred to as they were in the trial court.
The Myerses filed suit against the Angleys in the Pinellas County Circuit Court seeking damages for injuries sustained by Mrs. Myers in a rear-end automobile collision when the car in which she was a passenger was struck from behind, alleging among other things that her earning capacity had been permanently impaired. However, there was no specific allegation of loss of wages. By amendment Hartford, the insurance carrier, was added as a party defendant. All defendants answered, denying liability. The case was set for trial on February 24, 1970, and on February 12, 1970, the Angleys filed motion for separate trial from Hartford, which the court denied. Defendants' motion for new trial after verdict was also denied.
Appellants raise here essentially three questions: (1) that appellees failed to allege loss of wages as being specific damages, and that while "impairment of earning capacity" was alleged as specific damages such is not strictly synonymous with "loss of wages"; (2) that the evidence did not establish that the neck injury on Mrs. Myers was caused by a blow from the rear, but that it was in fact more consistent with an injury caused by a vehicle stopping sharp, thus throwing the passenger's neck forward; and (3) that the trial court was in error in not granting a separate trial for Hartford. We will discuss these three propositions in the order stated.

(1) Loss of Wages or Impairment of Earning Capacity.

From a study of the entire record there does not appear to us to be any substantial ground for defendants' apprehension as to the essential nature of the damages asserted. To contend otherwise would be to make a play on words. The damages contended for by appellees consisted of the loss or impairment of income from work or employment. A lay jury could not have been reasonably misled as to the character of such damages relied upon.

(2) The Neck Injury.

This was a question for the jury. Even if the theory of appellants was correct as to the cause of the neck injury and even if such theory was comprehensible and was reasonable, yet it would still be an ultimate fact which could only be settled and determined by the jury as the trier of the facts. There is no error here.

(3) Was Hartford Entitled to a Separate Trial?

We believe that whether or not Hartford was entitled to a separate trial was within the discretion of the trial court. An insurer does not have an absolute right to severance. On a proper motion, the trial judge may or may not sever. It is within his discretion. Under the severance rule 1.270(b), 30 F.S.A., the trial judge could under all the facts and circumstances of the particular case determine whether there should be a severance and his ruling subject to review. See Durrett v. Davidson, Fla.App. 1970, 239 So.2d 46; Stecher v. Pomeroy, Fla.App. 1971, 244 So.2d 488.
In this case, we do not believe that the trial judge committed reversible error in denying severance. For these reasons we would affirm.
*85 LILES, J., concurs.
PIERCE, C.J., dissents with opinion.
PIERCE, Chief Justice (dissenting).
Was Hartford Entitled to a Separate Trial?
This case presents a situation which has unfortunately been shunted about from Court to Court without yet being satisfactorily determined. I must dissent from my colleagues' opinion regarding this question.
Prior to 1968 the Florida Courts had held that an insurance liability carrier for a tort-feasor defendant could not be made an additional party defendant in a suit involving damages arising out of an automobile accident. Indeed, so strongly had this "protection" of insurance companies become rooted into the procedural philosophy of so-called "damage suits" that the very mention, however inadvertently, of insurance companies within hearing of the jury, was, in most trial jurisdictions, cause for an immediate mistrial. The decisions were weighted against anyone suing an insurance company.
But the 1st District Court in 1968, in Bussey v. Shingleton et al, Fla.App. 1968, 211 So.2d 593, broke precedent with the previous line of cases "because of events happening subsequent to the decisions mentioned." In Bussey's case, attention was called to Rule 1.210(a), F.R.C.P. which provides inter alia that: "any person may be made a defendant who has or claims an interest adverse to the plaintiff [or] if his presence is necessary or proper to a complete determination of the cause." The 1st District Court thereupon held that the trial Court erred in granting Shingleton's motion to strike the insurance carrier as a party defendant.
The Supreme Court in Shingleton v. Bussey, Fla. 1969, 223 So.2d 713, affirmed the 1st District Court, holding that "a direct cause of action now inures to a third party beneficiary against an insurer in motor vehicle liability insurance coverage cases as a product of the prevailing public policy of Florida", and philosophizing that "[if] joinder is allowed initially, all the cards are on the table and all interrelated claims and defenses can be heard and adjudicated reciprocally among all parties * * *".
Later the 1st District Court had before it the case of Beta Eta House Corporation v. Gregory, Fla.App. 1970, 230 So.2d 495, wherein it was said that "there remains a sharp conflict of responsible opinion as to whether the disclosure of the existence of insurance held by a defendant in a negligence action does or does not have the effect of unfairly influencing the jury in arriving at its verdict". Then the opinion continues: "Until it can be established with reasonable certainty that the disclosure of insurance protection * * * does not in any manner influence a jury" against a defendant tort-feasor, "the courts should employ those procedural devices available" to preclude "the disclosure of the existence of insurance held by a defendant", one of which devices was said to be the utilization of Rule 1.270(b), Rules of Civil Procedure, authorizing separate trials, which device, "absent extraordinary circumstances, should be utilized". It was then stated that "the issues relating to the cause of action sued upon [should] be first tried under circumstances which exclude any reference to insurance", after which "a second trial confined solely to the issue of insurance coverage should be held". (All emphasis ours).
Thus the 1st District Court in Beta Eta apparently retracted from its previous holding in Bussey wherein it had been said that an "injured third party [has] an unquestionable right to join such maker of such insurance policy as a party defendant". 211 So.2d 596.
The 1st District Court certified Beta Eta to the Supreme Court as involving a question of great public interest, and upon the point in issue the high Court split. Beta *86 Eta House Corporation, Inc. of Tallahassee v. Gregory, Fla. 1970, 237 So.2d 163. The majority said that "the trial court may on motion of either party order separate trials" in cases where the insurance carrier is joined as a defendant in the tort action against the insured (Emphasis in text). The use of the word "may" would seem to imply some sort of discretion in the trial Court, but subsequent language in the opinion rather indicates the contrary. It says that the holding in Bussey "was to require the parties to `lay their cards on the table', [yet] the existence or amount of insurance coverage has no bearing on the issues of liability and damages, and such evidence should not be considered by the jury." The minority opinions in Beta Eta lend support to our interpretation of the majority opinion. Judge Boyd points out that "the holding of the District Court [which the majority opinion affirmed] requires an automatic severance when a liability insurer is co-defendant in a suit with its insured `absent extraordinary circumstances'", a holding that Judge Boyd says "* * * is actually to completely reverse the remedial aspects of Bussey". And the language of the Chief Justice's dissenting opinion was of like tempo.
In my foregoing discussion of the opinions involved in Bussey and Beta Eta, I have, because of space limitations, quoted only excerpts therefrom, but I have endeavored to preserve the rationale of the entire opinions from which the references were made, the objective being solely to ascertain what the Courts meant to hold.
My personal opinion is that the law as enunciated in the Bussey opinions was correct and the Beta Eta opinions were wrong. But we must follow the Supreme Court, and that Court in my considered view has now held in Beta Eta that 
(1) under Rule 1.210(a), F.R.C.P. an insurance liability carrier may be joined as a party defendant in a suit for damages against an insured tort-feasor,
(2) under Rule 1.270(b), F.R.C.P. the insurance carrier defendant may, upon motion and prior to trial of the main cause of action, have a severance from said trial, and thereafter have a separate trial upon the issue of its own liability under its insurance policy, and
(3) the right of the insurance company to such severance and separate trial is absolute except in "extraordinary circumstances" or until "it can be established with reasonable certainty" that the fact of insurance coverage would not "in any manner influence a jury in arriving at its verdict."
Applying the foregoing here, I would be impelled to hold that the trial Judge erred in denying the motion of the tort-feasor defendants for trial of the claim against them to be separate from that against the insurance company.