251 So.2d 18 (1971)
COMPANIA DOMINICANA de AVIACION and Underwriters at Lloyds, London, Appellants,
v.
Charles KNAPP, As Father of Clifford Knapp, a Deceased Minor, and As Husband of Ethyle Knapp, Appellees.
No. 70-755.
District Court of Appeal of Florida, Third District.
July 20, 1971.
Rehearing Denied August 20, 1971.
*19 Sam Daniels, McDonald & McDonald, Miami, for appellants.
Spence, Payne & Masington, George C. Vogelsang, Podhurst, Orseck & Parks, Miami, for appellees.
Before SWANN, C.J., and HENDRY, J., and CULLEN, RALPH O., Associate Judge.
PER CURIAM.
This action arose out of an airplane crash which took the lives of two of plaintiff's three sons when the aircraft crashed into the automobile paint and body shop on N.W. 36th Street in Miami where the boys were working at the time. On June 23, 1969 an airplane owned and operated by the defendant Compania Dominicana de Aviacion and insured by the defendant, Underwriters at Lloyds, London, took off from Miami International Airport. Immediately upon take-off, mechanical difficulties, arose and the plane, in a matter of minutes, crashed in the N.W. 36th Street area as the pilot attempted to return to the airport.
Defendants appeal from a final judgment for plaintiff, Charles Knapp, as father of Clifford Knapp, a deceased minor, and as husband of Ethyle Knapp. The final judgment in this action for the wrongful death of one of the deceased sons was in the amount of $1,800,000 rendered on a jury verdict for the plaintiff. § 768.03, Fla. Stat., F.S.A. The defendants have presented four points for reversal: failure to grant severance, failure to grant a mistrial for intentional injection of evidence of insurance payment, failure to grant mistrial for misconduct of counsel in claiming that the pilot had flunked U.S. competency tests and failure to grant a new trial on the ground that the verdict was excessive. As to all points we express the view that the appellant has failed to demonstrate reversible error.
Defendants first claim reversible error when the trial court denied their motions to sever Lloyds, the insurance carrier, from Dominicana as a party. Lloyds was joined as a party under Shingleton v. Bussey, Fla. 1969, 223 So.2d 713. After respective denials of defendant's motions to sever and for new trial the Supreme Court decided Beta Eta House Corp., Inc. of Tallahassee v. Gregory, Fla. 1970, 237 So.2d 163, in which it held that a trial court may order separate trials in cases in which an insurance carrier has been joined as a party defendant. Defendants claim the trial judge was not aware he could sever because Beta Eta which authorized such severances had not been released at the time their respective motions were denied. This argument overlooks the fact that a severance in civil cases has been held to be a matter of discretion in the trial court for many years. Vander Car v. Pitts, Fla. App. 1964, 166 So.2d 837; Bowen v. Manuel, Fla.App. 1962, 144 So.2d 341; and 32 Fla.Jur., Trial § 18.
We have reviewed the record and the briefs in light of this contention and find that the trial court did not abuse its discretion or commit error in the denial of *20 the motions for severance or the motions for new trial. See Beta Eta, supra; Hartford Accident & Indemnity Company v. Myers, Fla.App. 1971, 247 So.2d 83, 2 D.C.A.; Stecher v. Pomeroy, Fla.App. 1971, 244 So.2d 488; Durrett v. Davidson, Fla. App. 1970, 239 So.2d 46; and Rule 1.270(b), R.C.P., 30 F.S.A.
Defendants next contend that the trial court erred in refusing to grant a mistrial or motion for a new trial because of alleged prejudicial testimony. The testimony elicited from the disinterested witness during the plaintiff's case in chief was that the defendant insurance company had paid for damages to the witness' cars. The defendants argue that the rule pronounced in City of Coral Gables v. Jordan, Fla.App. 1966, 186 So.2d 60, affd, Fla. 1966, 191 So.2d 38 and Dade County v. Clarson, Fla. App. 1970, 240 So.2d 828 was violated. See also § 768.041, Fla. Stat., F.S.A. (formerly § 54.28, Fla. Stat. 1965). We hold that the trial court did not err in failing to grant a mistrial or a new trial.
During the trial in chief the manager of a used car lot was called by plaintiff. He was asked by plaintiff's attorney to describe the smoke from the Dominicana aircraft just before it crashed. The following occurred:
"A. Well, it was white. It was a whitish blue color and just a lot of it. In other words, when it come over it sprayed a lot of oil on our cars. The reason we know this, we had to wash all of the cars on our lot that was on the north end of the lot itself and the south end of the lot did not have any. So it appeared that something blowing throwed oil all over everything as it came across our lot there. And all this oil just went all over our cars and, in fact, the insurance company paid for cleaning all our cars."
The following testimony was then elicited:
"Q. That is Lloyd's of London?
A. Yes, sir.
ATTORNEY (D): I object, Your Honor.
THE COURT: It has been answered. I sustain the objection.
ATTORNEY (D): I move for a mistrial. I think that is an improper and prejudicial comment for counsel to make.
THE COURT: Denied.
ATTORNEY (P): I do not know whether he is talking about his own insurance company or Lloyd's.
ATTORNEY (D): The implication was that he was trying to shove it down our throat.
THE COURT: I have sustained the objection. The motion is denied. Disregard it."
After the noon recess, plaintiff's counsel requested the trial court to strike and instruct the jury to disregard the claims payment evidence; defense counsel objected to any further treatment of the matter on the ground it would only serve to emphasize it in the jurors' minds; and, accordingly, the trial judge said nothing further about the incident.
The testimony elicited contained two elements which have been looked upon as wholly irrelevant to the issues of a negligence action and as potentially prejudicial to a party. These elements are insurance and settlement. We have already determined that the trial court did not err in refusing to sever the insurance company, and therefore conclude that the mention of insurance did not constitute reversible error.
Even if insurance is mentioned, frequently curative instructions are the proper means of correcting the error. Only where the impropriety is so egregious that such instructions cannot dissipate the prejudice, should a mistrial be granted; e.g., Dade County v. Clarson, supra. The *21 principle is well known that the parties are not entitled to a perfect trial, but only one free from reversible error. Likewise, the rule has evolved that a motion for mistrial is directed to the sound judicial discretion of the trial judge who has observed the action and its effect upon the jurors. See generally, Dade County v. Clarson, supra. Therefore, not every breath of insurance automatically results in a mistrial. See generally, Douglass v. Galvin, Fla. App. 1961, 130 So.2d 282, 284-285. Because of these considerations, and the possibility of invited error or waiver (these two arguments are not raised herein), parties who object to the giving of curative instructions are sometimes not heard to complain; e.g., Douglass v. Galvin, supra. Each decision, then, must be evaluated to determine whether the trial judge abused his discretion in deciding whether a curative instruction can or cannot suffice. Douglass v. Galvin, supra. Therefore, even assuming the mention of insurance was prejudicial, then we conclude that the trial judge here did not err in determining that the problem could be remedied by a curative instruction.
Here, the statement of the disinterested witness was volunteered. The witness' remark was fleeting, and a minor incident in a seven-day trial. The court did state, "I have sustained the objection. The motion is denied. Disregard it." Defendants subsequently objected to further curative instructions. The plaintiff has argued that the jurors, on voir dire, indicated that newspaper articles which they had read before the trial reported that Lloyds' was the insurance carrier for the airline. We conclude that this was not the ordinary case where insurance coverage is constantly thrust before the jurors; cf. Ryan v. Noble, 95 Fla. 830, 116 So. 766.
One reason for a broad rule of exclusion as to insurance matters is the possibility of prejudice, which possibility is significantly diminished here. A second reason why the mention of insurance is often viewed as a contaminant to the laboratory atmosphere of reasoned deliberation is "* * * chiefly * * * the assumption that a knowledge of the fact of insurance against liability will motivate the jury to be reckless in awarding damages * * *." 2 Wigmore, Evidence § 282a, pp. 133-134 (3rd ed., 1940). This assumption cannot be drawn universally. The Florida decisions recognize, tacitly or expressly, "* * * that the injection of liability insurance matters into a tort action is no longer ipso facto prejudicial as a matter of law." Utica Mutual Insurance Company v. Clonts, 248 So.2d 511, 2 D.C.A., filed May 19, 1971. Such an assumption in this case is totally without foundation where a government is the defendant tortfeasor (and not a mere nominal party).
There are many situations in which the rule against the injection of insurance in the trial of a cause has no application. For example, if an abundantly wealthy entity with assets that included an insurance company had been sued in a negligence action and the fact that it was insured had been elicited, the conclusion would be absurd that the financial giant would be entitled to a new trial on the grounds of prejudice. Awarding a new trial in that instance would not comport with logic or common sense; similarly, awarding a new trial because of the mention of insurance would be an improper result where the government of a sovereign nation is the alleged tortfeasor.
Summarizing what we have said as to the mention of insurance, we conclude it was not prejudicial; even assuming it was prejudicial, it could be remedied by the curative instruction, which was given. Therefore, the trial judge did not err in denying the motions for a mistrial or for a new trial.
We next deal with the second element of the testimony elicited, having to do with compromise and settlement of an insurance claim. We conclude that the defendants were not prejudiced by such testimony here. The Jordan and Clarson cases, heavily *22 relied upon by defendant, deal with a principle of law concerning settlement which is not fully applicable to the case sub judice. Here we are dealing with the settlement of a remote insurance claim. The Jordan and Clarson cases may be further distinguished on the facts, and upon a third ground, to wit: the reasons for the policy underlying an exclusionary rule are not present in the case we now review.
In affirming the Jordan case, the Supreme Court at p. 38 of 191 So.2d held:
"* * * it was prejudicial error to allow the submission of evidence of settlement by defendant of the claim of a third party in the same accident." (Emphasis supplied.)
This court, 186 So.2d at pp. 62-63, commented that
"* * * the knowledge of the settlement by the driver with the defendant was immediately and completely destructive to the possibility of a fair trial between the plaintiff and the defendant. Every juror knew that plaintiff's witness, Bell, was the driver of the motor scooter, and that appellant, defendant, intended to show that the deceased had met his death solely through the negligent acts of Bell. In this atmosphere, when the jury became aware that the city had settled the claims of Bell and his father, appellant's defense that Bell was the sole cause of the accident evaporated." (Emphasis supplied.)
An analogous situation was involved in the Clarson case. This court held that such testimony was prejudicial and under the circumstances a cautionary instruction to the jury to disregard such testimony did not cure the prejudicial effect. We stated, at p. 829 of 240 So.2d:
"The jury determination as to liability and damages, under these circumstances, was not reached in a laboratory atmosphere uncontaminated with matters that public policy requires the jury not to consider. [citation omitted] A new trial as to all issues is therefore necessary. * * *" (Footnotes omitted.)
Of similar import are Utica Mutual Insurance Company v. Clonts, supra, which has been certified to the Florida Supreme Court [but cf. Stecher v. Pomeroy, supra and Hartford Accident and Indemnity Co. v. Myers, Fla.App. 1971, 247 So.2d 83, filed April 7, 1971] and Futch v. Josey, Fla. App. 1971, 247 So.2d 491, 2 D.C.A.
The settlement of the insurance claim for oil damage to the witness' automobiles was remote and unrelated to any inference of liability for personal injury or death resulting from the plane crash. The nature of the claims are too remote from one another for this inference reasonably to be drawn; (there is also a minor separation of time and distance between the two occurrences). There was no possibility, as in Jordan, that a defense would evaporate.
Even assuming that the mention of insurance was prejudicial, frequently curative instructions are the proper means of correcting the error. We rely upon the reasoning and authorities cited in our discussion of the insurance aspect of the testimony at issue. We conclude that the trial court correctly determined that the possible prejudice could be remedied by a curative instruction and that the curative instruction which was given did perform its function.
In summary, we have concluded that as to the mention of insurance and settlement: it was not prejudicial; even assuming it was prejudicial, the court was able to and did remedy the situation by the curative instruction given. Therefore, the experienced trial judge did not err in denying the motions for a mistrial or for a new trial.
We turn to appellant's contention that the jury verdict of $1,800,000 was excessive. If we had been members of the jury our verdict might not have been the same; but our function is to review the award made by the jury.
*23 Wigginton, J., dissenting in Gresham v. Courson, Fla.App. 1965, 177 So.2d 33, 40, discussed both the elements of damages and the scope of appellate review of jury verdicts as follows:
"It is established law of this state that the determination by a trial jury of the amount of damages to be awarded in a given case is entitled to great weight and should not be disturbed by an appellate court merely because the individual members of the court disagree with the amount awarded and prefer to substitute their judgment for that of the jury. This is particularly true when the jury's verdict has been approved by the judge who tried the case, heard the evidence and is in position to better judge whether the verdict is illegal and should be set aside.
"The award by the jury to the plaintiffs in this case was for loss of services of their child which they could reasonably expect to receive prior to his maturity, and for the pain and suffering experienced by them as a result of his death."
This court in Talcott v. Holl, Fla.App. 1969, 224 So.2d 420, 422, in reviewing a jury verdict for $1,500,000 in a personal injury action recently reiterated that a party who challenges the excessiveness of a jury verdict has the burden of showing a lack of support in the evidence or influence by prejudice. That case did not involve the instantaneous death of a minor child, and so is factually distinguishable.
Many of the Florida cases cited by appellants for reversal deal with awards to children younger than the deceased here, and many of these cases date between 1913 and the early 1940's. Two cases in particular merit discussion. First, Seaboard Air Line Railroad Co. v. Gay, Fla.App. 1967, 201 So.2d 238, affirmed an award of $80,000.00 for the death of a minor child, aged 12, to the surviving mother alone. This case was the largest verdict for the death of a minor child approved by a Florida appellate court. In Seaboard Air Line Railroad Company v. Gay, a twelve year old girl was killed as the result of a cartrain collision. The decision does not reveal whether the youngster had some extraordinary income-producing attributes but the court did say that it was
"* * * confronted primarily with one element, the value of the mother's mental pain and anguish * * *." The second case is Gresham v. Courson, Fla.App. 1965, 177 So.2d 33, where the First District Court over Judge Wigginton's dissent, reduced a $100,000.00 judgment to $50,000.00 entered in a wrongful death action for the death of an eleven month old only child of parents unable to have other children. The damages there were primarily for the past and future mental pain and suffering of both parents. Cf. Holland Paving Co. v. Dann, Fla.App. 1964, 169 So.2d 849 and Coast Cities Coaches, Inc. v. Donat, Fla.App. 1958, 106 So.2d 593.
In their brief opposing the motion for a new trial appellees cited numerous million dollar jury verdicts and several more recent cases were noted in their brief on appeal. Many are mere reports of trial verdicts which are not binding as precedent; they are also factually distinguishable as not being awards for the wrongful death of a minor.
The substance of the testimony of the numerous witnesses who testified as to the damages suffered is that Clifford Knapp was a fifteen year old graduate of junior high school about to enter high school in the fall. At the time of his death he was working at his father's paint and body shop, at no pay, for the summer. He was a good student, and a friendly, polite, warm, active and religious boy. He served as an acolyte at church. The Knapps had a close family relationship. He had his first and only date just two weeks prior to the crash. His church and recreational activities were detailed. A teacher testified that he stood head and shoulders above his contemporaries.
*24 A psychiatrist, the long-time family physician, and family friends testified to the grief and anguish of the parents. Medication continued to be required after the funeral; a vacation to escape the tragedy was cut short because of Mrs. Knapp's continued depression.
Mrs. Knapp had been speaking to Clifford on the telephone when the plane crashed. Mr. Knapp was outside the building, and saw the tragedy unfold.
In conclusion, the verdict was determined by a carefully chosen jury after a lengthy trial before an experienced and knowledgeable judge with the assistance of the expert counsel for the parties. The judge who presided, in the exercise of his discretion, declined to grant a new trial or reduce the award because of claimed excessiveness. See generally Cloud v. Fallis, Fla. 1959, 110 So.2d 669.
No one doubts that the verdict is large. No one doubts the enduring pain which the parents have suffered. Mr. Justice Terrell in Winner v. Sharp, Fla. 1950, 43 So.2d 634, 636-637, explained with understanding the helpless anxiety caused by an unexpected, tragic death of a child.
It is our conclusion that the verdict and judgment are supported in law and fact, and no reversible error has been made to appear. Therefore the judgment appealed is affirmed.
Affirmed.
SWANN, Chief Judge (dissenting).
I regretfully must dissent from the majority opinion.
Our Supreme Court has said "it was prejudicial error to allow the submission of evidence of settlement by defendant of the claim of a third party in the same accident". Jordan v. City of Coral Gables, Fla. 1966, 191 So.2d 38.
We held that a cautionary instruction did not cure the prejudicial effect of such testimony in Dade County v. Clarson, Fla. App. 1970, 240 So.2d 828.
Here, there was testimony elicited, in my opinion, that the defendant insurance company had paid the claim of a third party arising from the same accident. This was prejudicial under Jordan, supra, and not subject to a curative instruction under Clarson, supra.
Accordingly, I would reluctantly reverse the final judgment and remand for a new trial.