Mrs. Karen Sue **MEALEY**, on behalf of herself and the minor children of Jimmy Dale Mealey, and as Administratrix of the Estate of Jimmy Dale Mealey, Plaintiff-Appellee,

v.

**SLATON MACHINERY SALES, INC.,** Defendant-Appellant.

**RYDER TRUCK RENTAL, INC.,** Plaintiff-Appellee,

v.

**SLATON MACHINERY SALES, INC.** and William Taft Bryson, Defendants-Appellants.

No. 73–3456.

United States of Appeals, Fifth Circuit.

Feb. 14, 1975.

---

Edward L. Savell, Atlanta, Ga., for defendant-appellant.

Kyle Yancey, Atlanta, Ga., for Mealey and others.

Robert B. Hocutt, Atlanta, Ga., for Ryder Truck Rental.

Before WISDOM and CLARK, Circuit Judges, and GROOMS, District Judge.

GROOMS, District Judge:

This is an appeal by Slaton Machinery Sales, Inc. from a judgment on a jury verdict in favor of Karen Sue Mealey on behalf of herself and her minor children, and as Administratrix of the estate of her deceased husband, Jimmy Mealey, for his death; and an appeal by Slaton and William Taft Bryson from a judgment likewise on a jury verdict in favor of Ryder Truck Rental, Inc. for property damage. The actions arose out of a collision during the night of May 2, 1972, on I-75 near Perry, Georgia, between a truck owned by Ryder, leased to Owens-Illinois Glass Company, and driven by its employee, Herman Rutherford, and a truck owned by Slaton and driven by Bryson. Mealey, also an employee of Owens-Illinois, was asleep in the Ryder truck at the time of the collision which occurred when the Ryder unit ran into the rear of the Slaton unit.

In brief summary the disputed facts were whether Rutherford through inattention or otherwise was solely responsible for the collision, or whether Bryson was negligently driving without lights, angling on the highway, or driving at a speed less than 40[1] miles per hour, and thereby proximately contributed to the collision.

The drivers were the only eyewitnesses to the collision who testified.

Rutherford testified that at the time of the collision he was driving "probably around 60 miles per hour;" his lights were on low beam; he had a vision range of 50 to 70 feet; he was approximately 50 feet behind the Slaton unit when he first saw it; it was traveling at a speed of no more than 15 to 20 miles per hour and was at an angle on the road with the left front of the trailer over the southbound center line; he hit the trailer right in the center; he could have seen the Slaton unit from a quarter to half a mile if it had had its lights on; and that he could probably have avoided the collision if he had seen the Slaton unit when he was from 150 to 250 feet away.

Bryson testified that he was traveling in a straight line and not at an angle and at a speed of approximately 45 miles per hour; that his lights were burning; that the force of the impact knocked the trailer loose from the tractor, causing him to lose his braking power; and that his tractor came to a stop approximately two blocks away, leaving the trailer sitting in the road near the point of impact.

■ Appellants assert error for the refusal of their charge No. 6.[2] After an extended colloquy over the applicability of the doctrine of last clear chance or avoidance of consequences, the court concluded that notwithstanding the fact that any negligence of Rutherford was not imputed to Mealey or to Ryder, a bailor of the truck, the doctrine was ap-

1. The maximum at the place and time of the collision was 60 miles per hour for trucks and the minimum 40 miles per hour.

2. "If you should find that Defendant Bryson was negligent but that in the exercise of ordinary care Herman Rutherford should have seen the defendant's unit and avoided hitting it, and that Herman Rutherford's failure to avoid hitting the defendant's unit intervened and became the proximate cause of the collision, I charge you that the plaintiffs could not recover in this case."

plicable, but stated that it would give its own avoidance charge, which was practically "the same as your No. 6." The court then gave its own charge. Following objections of appellee's counsel and further colloquy, the court called the jury back and withdrew its charge, told the jury that it was incorrect, and to "forget that the doctrine of avoidance and last clear chance is but a doctrine of proximate cause under another name."

It will be readily observed that charge 6 postulates a finding against the plaintiffs, if Rutherford's failure to avoid hitting the defendant's unit intervened and became the *proximate cause* of the collision rather than the *sole proximate cause* of it. Unless the last clear chance or avoidance doctrine was applicable, and we hold that it was not, the charge ignores the principle of law that there may be more than one proximate contributing cause of an injury.

■■■ The court's initial charge was based upon Louisville. & Nashville R. Co. v. Patterson, 77 Ga.App. 406, 49 S.E.2d 218.

In Georgia Power Co. v. Blum, 80 Ga. App. 618, 57 S.E.2d· 18 (1949), the court stated that there was language in *Patterson* that might indicate that where one has an opportunity to avoid the consequences of another's negligent act and fails to do so, such failure amounts to the sole proximate cause of the injury to a third person. The court expressed the view that it did not believe that the language was intended to be so construed, "as this rule of law does not apply where a third party, not himself at fault, sues joint tort-feasors."

The court in its corrected charge followed Atlantic Coast Line R. Co. v. Coxwell, 93 Ga.App. 159, 91 S.E.2d 135 (1955), which had expressly overruled *Patterson*, and ruled:

"This code section [§ 105–603] and these rules of law—the avoidance doctrine and the last-clear-chance doctrine—apply only where there is a negligent plaintiff. . . . What is here held, among other things, is that

the last-clear-chance doctrine cannot be applied in a case where the plaintiff is guilty of no negligence."

To same effect, Georgia Northern Ry. Co. v. Hathcock, 93 Ga.App. 72, 91 S.E.2d 145, decided at approximately the same time.

*Coxwell* has been consistently followed. In Hirsch v. Chapman, 109 Ga. App. 444, 136 S.E.2d 409 (1964), the court said:

"In Atlantic Coast Line R.R. Co. v. Coxwell, 93 Ga.App. 159, 91 S.E.2d 135, it was finally made clear that last clear chance does not apply against a non-negligent plaintiff."

The doctrine was restated in Walker Hauling Co. v. Johnson, 110 Ga.App. 620, 139 S.E.2d 496. And in Stroud v. Willingham, 126 Ga.App. 156, 190 S.E.2d 143 (1972), the court clearly recognized the rule.

The court specifically charged the jury that neither plaintiff would be entitled to recover if the negligence of Rutherford was the sole proximate cause of the collision.

There was no error in refusing charge 6. Nor did the court err in withdrawing its erroneous charge and substituting a correct charge. It was the court's duty to follow that course when it discovered that its initial charge did not correctly state the law of Georgia. At the time the corrected charge was given, there was no motion for mistrial or other objection based on any possible confusion of the jury resulting from the court's action.

Since we have held that under the facts and applicable law the last clear chance or avoidance of consequences doctrine was inapplicable we need not explore the question as to whether actual knowledge of peril is required or whether constructive knowledge will suffice.

■■■ Appellants insist that the court erred in its corrected charge in charging:

"I further charge you that if you find· that this collision occurred solely—and we know what solely means—by reason of the negligence of Herman

Rutherford, and that the defendants were not negligent in any particular, then plaintiff would not be entitled to recover of the defendants."

Appellants assert that the vice of the charge was that the jury was instructed in effect that the absence of negligence on the part of defendants was necessary to absolve them from liability, when actually the defendants could have been negligent and yet their negligence not be the proximate cause of the collision.

This part of the court's charge cannot be treated in isolation, but must be read with the charge as a whole. Bacon v. Kansas City Southern Ry. Co., 373 F.2d 515 (5th Cir.).

In its initial instruction the court charged that for the plaintiffs to recover the plaintiffs "must show not only that defendant was negligent, but that the negligence was the proximate cause" of the injuries and damages, and that "negligence in and of itself—whether it's ordinary negligence or negligence as a matter of law is not any cause for the recovery of damages."

In the paragraph immediately preceding the challenged part of the charge and in that immediately following, the court charged that a recovery was conditioned upon the establishment that "such negligence was a proximate contributing cause of the collision," and that if the negligence, if any, of Bryson and Rutherford "concurred to bring about or cause this collision," plaintiffs' right to recover would not be defeated.

Later when the jury sent a note to the court inquiring if one driver was more negligent than the other whether the verdict should go to the less negligent, the court restated the last quoted part of its prior charge and then stated:

"[L]et me say that negligence in and of itself unless it is a cause of an injury or a contributing proximate cause of an injury is inconsequential.

But if both drivers were negligent and if their negligence cooperated and concurred in causing their injuries then the plaintiffs are entitled to recover. Now to illustrate that a little further, if on the other hand, driver Rutherford was negligent and if his negligence was the sole proximate cause of the injuries that would rule out the possibility of there being two causes or any concurrent cause you see."

In view of the court's statement and restatement of the correct rule, the jury could hardly have been mislead by the isolated statement of which complaint is now made. We find no error in regard to same.

█ Appellants assign as error the action of the court in incorporating as part of its oral charge plaintiffs' requested charge No. 27.[3] The exception did not state distinctly the grounds of their objection. Rule 51, Federal Rules of Civil Procedure, and Gorsalitz v. Olin Mathieson Chemical Corporation, 429 F.2d 1033 (5th Cir.). Nevertheless we do not find error. The charge, illuminated as it was by ample explanation, appears to have correctly stated the law. Rogers v. Johnson, 94 Ga.App. 666, 96 S.E.2d 285, and Sheppard v. Martin, 100 Ga.App. 164, 110 S.E.2d 429.

█ Appellants further claim error in the charge that the statute relating to the giving of turn signals authorized the giving of such signals by either hand or flashing light, because the evidence clearly showed that failure to give a hand signal could not have been the proximate cause of the collision. In view of the probability that a flashing signal might have been more visible than a hand signal and might have aided Rutherford in seeing the Slaton unit earlier than he did, the charge that he could discharge any duty that he was under by giving the hand signal was not harmful but actually favorable to him. The turn

---

3. "A driver of a motor vehicle must anticipate that the roadway ahead may be obstructed by objects normally and legally found upon the roadway, such as other motor vehicles being driven in a lawful and prudent manner, however, a driver is not bound to anticipate the presence on the highway of objects that are illegally placed on the highway."

signal statute requires a turn signal only in the event other traffic may be affected by the turn and the court so charged.

■ Finally, appellants seek a reversal because of the action of the court in allowing an economist to testify from certain government tables as to the work life expectancy of the deceased, and to compute his lifetime earnings based thereon with an assumed annual increase in his pay of 4%.

The economist, Dr. James Crawford, holds a Doctoral degree in economics from the University of Wisconsin, and at the time of his testimony was Professor of Economics and Chairman of the Department of Economics at Georgia State University. His studies required him to make projections of future earnings. He testified that the tables were prepared by the United States Department of Labor, Bureau of Labor Statistics, and were widely used by the Government and by business and industry; that they were a standard work on work life expectancy, and in his opinion were reliable.

For the five full years preceding his death the deceased's earnings increased 20.9% per year. The witness's projected assumption of an annual 4% increase in pay was based upon past earnings of teamsters in Georgia, in the Southeastern states, and in the nation at large. With an annual increase of 4% the deceased with a work life expectancy of 25.76 years would have had lifetime earnings of $828,620.00. Using a discount figure of 6% the commuted value was $399,804.00.

The tables were admissible, Central Railroad Co. v. Richards, 62 Ga. 306; Pierce v. Tennessee Coal, Iron & Ry. Co., 173 U.S. 1, 19 S.Ct. 335, 43 L.Ed. 591, and the court did not err in permitting the witness to refer to them. Kershaw v. Sterling Drug Co., 415 F.2d 1009 (5th Cir.). Actually the work life expectancy shown by the tables was 9 years less than his life expectancy as shown by the standard tables which were admitted without objection. The 4% assumed increase was not without evidentiary support. The weight to be given to the tables and to Dr. Crawford's testimony was for the jury, and in that respect it is noted that the verdict was for only one-half of projected commuted value. The judgments will be and are affirmed.