**Mary L. HIGGINS, as Administratrix of the Estate of Joseph T. Higgins, Jr., Deceased, Plaintiff-Appellee,**

v.

**KINNEBREW MOTORS, INC., and Utica Mutual Insurance Company, Defendants-Appellants.**

No. 76–2051

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

March 2, 1977.

Rehearing Denied March 28, 1977.

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

Steve M. Watkins, Tallahassee, Fla., for defendants-appellants.

W. Dexter Douglass, Tallahassee, Fla., Alexander, Vann & Lilly, Charles H. Watt, III, Thomasville, Ga., for plaintiff-appellee.

Before BROWN, Chief Judge, and GEWIN and MORGAN, Circuit Judges.

JOHN R. BROWN, Chief Judge:

This is an appeal by Kinnebrew Motors, Inc. and Utica Mutual Ins. Co. from a judgment on a jury verdict in favor of Mary L. Higgins as Administratrix of the estate of her deceased husband, Joseph T. Higgins, Jr. and as surviving wife.

The diversity action arose out of a two-car collision near Tallahassee, Florida on September 5, 1974. Decedent Higgins and a car salesman employed by Kinnebrew were traveling in a car owned by Kinnebrew and insured by Utica when the car collided with a second auto causing the death of the two men. Higgins was apparently a prospective auto purchaser. The facts are disputed as to who was operating the vehicle at the time of the collision. However, the issue of liability is not appealed.

Mary L. Higgins brought suit under the Florida Wrongful Death Act, Fla.Stat.Ann. § 768.16 *et seq.*, for the wrongful death of Joseph T. Higgins, Jr. The jury awarded damages in the amount of $301,569.65 in favor of Mary L. Higgins as Administratrix of the estate of Joseph T. Higgins, Jr. and

$200,000.00 in favor of Mary L. Higgins as survivor. Kinnebrew urges that the award is excessive and should be set aside or a substantial remittitur ordered. Kinnebrew also claims that the District Court committed reversible error by admitting the testimony of an economics expert as to future damages when the expert failed to consider the statutory method of computing damages. We hold that the testimony was admissible and that the award is not excessive.

■ Fla.Stat.Ann. § 768.21 [1] details the allowable damages in a wrongful death action. Under Florida law, § 768.21(6)(a), a surviving spouse may recover loss of net accumulations beyond death and reduced to present value. Section 768.18 defines net accumulations as:

> [T]he part of the decedent's expected net business or salary income, including pension benefits, that the decedent probably would have retained as savings and left as part of his estate if he had lived his normal life expectancy. "Net business or salary income" is the part of the decedent's probable gross income after taxes, excluding income from investments continuing beyond death, that remains after deducting the decedent's personal expenses and support of survivors, excluding contributions in kind.

Kinnebrew directs this appeal solely to the testimony of the expert witness as to the economic loss and the allowable damages under the Florida statute. The expert, whose competence is not otherwise challenged, Dr. James E. Pitts, received his Ph.D. in economics at the University of Kentucky and had varied experiences in calculating economic worth of decedents. Dr. Pitts testified that decedent was 27½ years old at the time of death with a remaining 43¾ years life expectancy. He further testified that if Higgins worked until age 62 and based on his earnings record with forecast for the future his net accumulated estate at normal death reduced to present value would be $303,208.00. If decedent had worked up to age 65, Dr. Pitts calculated his net accumulation to be $328,208.00. Kinnebrew challenges several elements of the calculations.

■ Statutorily, decedent's personal expenses and support of survivor must be deducted from decedent's net business or salary income in calculating net accumulations. Kinnebrew claims the figures utilized for the decedent's personal expenses and support of survivor did not reflect the actual expenses of the couple. Dr. Pitts testified that his calculations were based upon a deduction of $2,100.00 for decedent's personal expenses and a like amount for support of survivor. This figure was deter-

---

1. The applicable portions of § 768.21 provides:

    Damages may be awarded as follows:

    (1) Each survivor may recover the value of lost support and services from the date of the decedent's injury to his death, with interest, and future loss of support and services from the date of death and reduced to present value. In evaluating loss of support and services, the survivor's relationship to the decedent, the amount of the decedent's probable net income available for distribution to the particular survivor, and the replacement value of the decedent's services to the survivor may be considered. In computing the duration of future losses, the joint life expectancies of the survivor and the decedent and the period of minority, in the case of healthy minor children, may be considered.

    (2) The surviving spouse may also recover for loss of the decedent's companionship and protection and for mental pain and suffering from the date of injury.

        *   *   *   *   *   *

    (5) Medical or funeral expenses due to the decedent's injury or death may be recovered by a survivor who has paid them.

    (6) The decedent's personal representative may recover for the decedent's estate the following:

    (a) Loss of earnings of the deceased from the date of injury to the date of death, less lost support of survivors excluding contributions in kind, with interest. If the decedent's survivors include a surviving spouse or lineal descendants, loss of net accumulations beyond death and reduced to present value may also be recovered.

    (b) Medical or funeral expenses due to the decedent's injury or death that have become a charge against his estate or that were paid by or on behalf of decedent, excluding amounts recoverable under subsection (5).

mined by statistics from the U. S. Bureau of Labor that the intermediate living budget for a husband and wife under 35 with no children was approximately $4,200.00. Kinnebrew objects to the fact that Pitts did not obtain or use the actual expenses of the Higgins in his calculations. This Court has previously upheld an expert witness' use of figures taken from United States Department of Labor, Bureau of Labor Statistics tables. *Mealey v. Slaton Machinery Sales, Inc.,* 5 Cir., 1975, 508 F.2d 87. The admission of the opinion of Dr. Pitts, which was formed by reliance on figures from the Bureau of Labor Statistics, does not provide a basis for reversal.[2] *See Burlington Northern Inc. v. Boxberger,* 9 Cir., 1975, 529 F.2d 284.

In further support of its position, Kinnebrew argues that the $4,200.00 figure does not form a reasonable basis for computation because the testimony of decedent's widow indicates that expenditures for personal expenses and support of survivor were actually much higher. This argument fails to consider the testimony in relation to expenditures for items which are consumed through the normal process of living and those which retain their value. Dr. Pitts testified that his estimate included expenditures only for items that did not retain their value. The jury did not have to ignore the possibility that Mrs. Higgins included expenditures for both type items in her testimony.

The weight to be given the testimony of both the widow and the expert was for the jury to determine. *Mealey v. Slaton Machinery Sales, Inc., supra.* The jury could conclude from all the evidence that the statistics relied upon by Dr. Pitts were representative of the Higgins and we cannot say that in making the award, the jury exceeded the bounds of the probabilities presented by the evidence. *See Har-Pen*

*Truck Lines, Inc. v. Mills,* 5 Cir., 1967, 378 F.2d 705; *Compania Dominicana de Aviacion v. Knapp,* 251 So.2d 18 (Fla.App., 1971); *City of Miami v. Jiminez,* 266 So.2d 46 (Fla. App., 1972). As to the request for a remittitur the verdict was within the shield of the Seventh Amendment. *See Gorsalitz v. Olin Mathieson Chemical Corp.,* 5 Cir., 1970, 429 F.2d 1033.

AFFIRMED.

---

2. The testimony was also properly admitted under the F.R.Evid., R. 703.

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

* Rule 18, 5 Cir., see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.